# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CC-02189-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

*v.*

*CAROLYN K. McNEEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2007 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL BY: KATHERINE JANE CALDWELL |
| ATTORNEY FOR APPELLEE: | DAVID E. BANE, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/04/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     In November 1999, Carolyn K. McNeel was terminated from her employment as a

DHS-Social Worker with the Winston County Department of Human Services.  In April

2004, this Court affirmed the decision of the Mississippi Employee Appeals Board ("EAB")

to reinstate her, "with back pay and benefits, as of the date of termination, subject to set off

of any sum received from other sources."  Following the receipt of her back-pay award and

her reinstatement to the position of DHS-Social Worker with the Kemper County Department

of Human Services, McNeel filed an appeal with the EAB raising multiple issues regarding

back pay and reinstatement.  An order of the hearing officer was affirmed by the "Full Board

Order" of the EAB. Both the Mississippi Department of Human Services ("MDHS") and McNeel appealed therefrom. A November 2007 order of the Circuit Court of Winston County, Mississippi, affirmed in part, affirmed and remanded in part, and reversed and remanded in part the "Full Board Order" of the EAB. Feeling aggrieved, the MDHS filed notice of appeal, and McNeel filed notice of cross-appeal.

**FACTS**

¶2.     On November 10, 1999, McNeel's employment as a DHS-Social Worker with the Winston County Department of Human Services was terminated. McNeel subsequently received unemployment benefits totaling $4,940. On April 8, 2004, this Court addressed McNeel's termination, finding:

> no error in the record or in the hearing officer's order to reinstate [her] with back pay.[1] This Court finds that the decision of the [EAB] was supported by the evidence, was not arbitrary or capricious, and does not violate any statutory or constitutional right. Therefore, this Court affirms the circuit court judgment affirming the decision of the [EAB].

*Miss. Dep't of Human Servs. v. McNeel*, 869 So. 2d 1013, 1020 (Miss. 2004).

¶3.     Based thereon, McNeel received back pay totaling $147,294.10 and was reinstated to the position of DHS-Social Worker with the Kemper County Department of Human Services. On June 16, 2004, McNeel and her husband, Bill McNeel, met with Willie Fortner, a "[f]inancial [c]oordinator in charge of payroll and accounts payable" with the MDHS; Gloria Jackson, a "personnel director" for the MDHS; and Daren Vandervender of the MDHS, to

---

[1] The order of the hearing officer stated that "the action of [the MDHS] is set aside and [McNeel] is hereby *reinstated to her position, with back pay and benefits, as of the date of termination, subject to set off of any sum received from other sources*." (Emphasis added.)

2

discuss multiple issues McNeel had regarding her back pay and reinstatement. Following that meeting, McNeel was transferred laterally to the Neshoba County Department of Human Services. Still aggrieved, McNeel initiated and progressed through the mandated grievance procedure with the MDHS. On July 22, 2004, McNeel filed an appeal with the EAB regarding her back pay and reinstatement. According to the hearing officer, the April 28, 2005, hearing pertained to "whether or not the [MDHS] has complied with the Court's Order."

¶4.    The August 16, 2005, order of the hearing officer found:

(1) The [MDHS], rather than reinstating [McNeel], treated her as an individual that has been re-employed to the same position; herein the [MDHS] failed or refused to follow the Court's Order.

[McNeel] should have been treated as an individual that has never been terminated from her position, not as one re-employed; her back pay should have been calculated as DHS-Social Worker, who is entitled to every advancement . . . offered and granted to DHS-Social Workers during the period of time from November 1999 to and through April 2004. Her previous record and the fact that during this period of time she kept her [s]tate social worker license in effect, reflects that she would have qualified for all advancements offered to DHS-Social Workers, but for the arbitrary and capricious action of the [MDHS] from November 1999 to and through April 2004. Her back pay shall be recalculated accordingly.

(2) The [MDHS] did not reinstate [McNeel] to her position in Winston County . . . ; they again chose to ignore the Order of the Court and placed her in Kemper County . . . , a direct violation of the Court Order. [McNeel] is to be placed in Winston County . . . and given consideration for any promotional opportunity to a County Director's position.

(3) [McNeel] was wrongfully terminated in November, 1999, due to the arbitrary and capricious action of the [MDHS]; the Order of the Hearing Officer stated "[McNeel] is hereby reinstated to her position, with back pay and benefits, as of the date of the termination, subject to set off of any sums received from other sources." One of the benefits restored to [McNeel], as of the date of the termination, was that of free medical insurance, as provided by

3

the State of Mississippi through her employment with the [MDHS]. As the direct result of protracted litigation by the [MDHS], [McNeel] was without the benefit of free medical insurance. As an employee of the [MDHS], from the date of termination, it is incumbent that [McNeel] be provided the benefit of free medical insurance and if necessary to be financially reimbursed, if personal funds were expended for medical insurance, during this period of time.

(4) [McNeel] seeks interest on her back pay; reimbursement for continuing professional education; [S]ocial [S]ecurity taxes; the difference in income tax attributed to the lump sum payment of back pay; [c]ourt fees, legal fees and out of pocket costs. [McNeel] is not entitled to interest on her back pay; the payment of interest as set out in Section 75-17-1 of the Mississippi Code of 1972, Annotated, does not apply to the State o[r] political subdivisions.

Continuing professional education is neither a part of back pay [n]or a benefit, and this request is denied; neither is she entitled to any reimbursement on [S]ocial [S]ecurity taxes or any reimbursement due to the state and federal taxes on the back pay lump sum payment.

The [EAB's] jurisdiction is set out by statute; the statute does not provide authority to award court cost[s], out of pocket costs, or attorney fees, [therefore,] this request is denied.

(5) Any recalculation of the back pay will take into consideration the fact that [McNeel] did receive some funds from other sources during the period of litigation.

Both McNeel and the MDHS then requested "review by the Full Board." The "Full Board Order" of the EAB affirmed the order of the hearing officer.

¶5.     On July 14, 2006, the MDHS filed a "Petition for Writ of Certiorari with Supersedeas" in the Circuit Court for the First Judicial District of Hinds County, Mississippi. On August 3, 2006, McNeel filed notice of appeal in the Circuit Court of Winston County.[2] On August

_____

[2]Mississippi Code Section 25-9-132(1) provides that an employee aggrieved by a final decision of the EAB may appeal "to the circuit court of the principal county of the employee's employment or the Circuit Court of the First Judicial District of Hinds County . . . ." Miss. Code Ann. § 25-9-132(1) (Rev. 2006).

9, 2006, the Circuit Court for the First Judicial District of Hinds County entered a "Transfer Order" providing that in the interest of "judicial economy" and because "the locus of the action rests in Winston County," the MDHS' petition is combined with McNeel's appeal and "transferred to the Circuit Court of Winston County . . . ." On October 20, 2006, the Circuit Court of Winston County granted the MDHS' "Petition for Writ of Certiorari with Supersedeas."

¶6.     Subsequently, the November 20, 2007, order of the circuit court provided that:

1. The parts of the decision of the [EAB] that denied [McNeel's] request for reimbursement of travel and telephone expenses and comp time credited to her personal leave time; that awarded her reimbursement of personal funds expended on medical insurance while denying her the estimated value of the benefit of having medical insurance; that denied her reimbursement for continuing education expenses, attorney fees and related costs; that denied her reimbursement of additional federal income taxes; and that denied her request for an independent firm to calculate monies owed to her are *affirmed*.

2. McNeel's request to have this court clarify the language of the hearing officer concerning her back pay and promotions is *denied, however, that issue is remanded* to the [EAB] for them to clarify what promotions or advancements she was awarded, if any, by job title, and the specific pay rate from which . . . the back pay that she was awarded is to be calculated.

3. The part of the decision of the [EAB] that denied McNeel pre-judgment interest is *reversed and remanded* for the purpose of determining whether pre-judgment [interest] should be awarded, and if so, at what rate.

4. The part of the decision of the [EAB] that denied McNeel post-judgment interest is *reversed and remanded* for a determination of the post-judgment rate of interest that she is to receive on her award of back pay and benefits.

5. The part of the decision of the [EAB] that denied McNeel's request that her back pay be properly reported to the Social Security Administration [("SSA")] is *reversed and rendered*, and the [MDHS] is to properly report her back pay

5

to the Social Security Administration pursuant to the rules and regulations issued by the Internal Revenue Service [("IRS")].[3]

(Emphasis added). Based thereon, the MDHS filed notice of appeal and McNeel filed notice of cross-appeal.

**ISSUES**

¶7. This Court will consider:

(1) Whether McNeel should be reimbursed for travel expenses and credited compensatory time off to her personal leave balance for being placed in Kemper County and later transferred to Neshoba County.
(2) Whether McNeel should be awarded a career-ladder promotion to Social Worker Advanced and/or promoted to Area Social Worker Supervisor.
(3) Whether McNeel should be compensated for having no Social Security earnings from 2000 through 2003 via MDHS "properly" reporting her back wages to the Social Security Administration.
(4) Whether McNeel should be compensated for medical insurance and medical expenses incurred by virtue of her wrongful termination.
(5) Whether McNeel should be compensated for continuing professional education expenses incurred by virtue of her wrongful termination.
(6) Whether McNeel should receive interest on the back pay owed to her by the MDHS.
(7) Whether McNeel should be compensated for legal fees incurred by virtue of her wrongful termination.
(8) Whether McNeel should be compensated for legal fees incurred regarding her unemployment benefits.
(9) Whether McNeel should be compensated for additional income taxation incurred by virtue of her wrongful termination.
(10) Whether all monies owed to McNeel should be calculated by a capable accounting firm or the Mississippi State Auditor's Office.[4]

---

[3]The rationale behind each decision within the circuit court's order, discussed in its November 20, 2007, opinion, will be addressed in the Analysis section *infra*.

[4]Issues (3), (4), and (6) were raised by the MDHS on appeal. The remaining issues were raised by McNeel on cross-appeal.

**STANDARD OF REVIEW**

¶8.     The judicial review of EAB decisions:

> shall be limited to a review of the record made before the [EAB] or hearing officer to determine if the action of the [EAB] is unlawful for the reason that it was:
>
> > (a) Not supported by any substantial evidence;[5]
> > (b) Arbitrary or capricious; or
> > (c) In violation of some statutory or constitutional right of the employee.[6]

Miss. Code Ann. § 25-9-132(2) (Rev. 2006).

**ANALYSIS**

> **I.     Whether McNeel should be reimbursed for travel expenses and credited compensatory time off to her personal leave balance for being placed in Kemper County and later transferred to Neshoba County.**

¶9.     In November 1999, McNeel was terminated from her employment as a DHS-Social Worker with the Winston County Department of Human Services.  The order of the hearing officer, subsequently affirmed by this Court, provided that McNeel was to be "reinstated *to her position, with back pay and benefits . . . .*"  (Emphasis added).  Nonetheless, in April 2004, the MDHS reinstated McNeel to the position of DHS-Social Worker, albeit in Kemper

---

[5]"Substantial evidence means more than a scintilla or a suspicion." ***Miss. State Dep't of Health v. Natchez Cmty. Hosp.***, 743 So. 2d 973, 977 (Miss. 1999).  In examining the record as a whole, this Court will not hesitate to reverse the EAB's order if it was "based on a mere scintilla of evidence, and is against the overwhelming weight of the credible evidence . . . ." ***Walters v. Miss. Dep't of Econ. and Cmty. Dev.***, 768 So. 2d 893, 895 (Miss. 2000) (quoting ***Johnson v. Ferguson***, 435 So. 2d 1191, 1194-95 (Miss. 1983)).

[6]"[W]here an administrative agency errs as a matter of law, courts of competent jurisdiction should not hesitate to intervene." ***Grant Ctr. Hosp., Inc. v. Health Group of Jackson, Inc.***, 528 So. 2d 804, 808 (Miss. 1988).

County, rather than Winston County.[7]  On June 16, 2004, McNeel was then laterally transferred to Neshoba County.  Although the same position in Winston County became vacant on December 31, 2004, at the time of the April 28, 2005, hearing, McNeel remained employed in Neshoba County.  At the hearing, McNeel asserted that she "want[ed] to be reimbursed for working away from Winston County.  I should be reimbursed $1,555 for travel expenses to Kemper and Neshoba Counties.  I should have 95 comp hours for travel time added to my time records."[8]

¶10.  According to the circuit court:

> [t]he order of the hearing officer rendered on August 16, 2005, ordered that McNeel be placed in Winston County.  Travel expenses, telephone expenses, and personal leave *were not addressed* specifically by the hearing officer, nor were they addressed in the full board's affirmance.  *This court will treat their silence as a denial.  McNeel has offered no authority in support of her request for such reimbursements.*  Therefore, after reviewing the record, this court finds that there is substantial evidence in the record to *affirm* the hearing officer's and full board's decisions.

(Emphasis added.)

---

[7]According to Billy Mangold, the Division Director of Family and Children Services for the MDHS, and Tabitha Stewart, the Area Social Worker Supervisor for the Winston County Department of Human Services, there was not a vacancy in the Winston County Department of Human Services at the time of McNeel's reinstatement.  Moreover, Mangold testified that Kemper County:

> was a one-worker county.  We had a supervisor that could work one on one. We had a new . . . computer system, that [McNeel] . . . had not worked with that came in effect while she was out.  And it was just felt that it would be in her best interest, as well as the best interest of [the MDHS] . . . for her to be placed in Kemper County.

[8]All references to McNeel's hearing testimony are found in "Appellant's Reconstructed Testimony" because "the transcript of the second day of the hearing (June 13, 2005) was either lost and/or destroyed."

¶11. Mississippi Employee Appeals Board Administrative Rule 24(A) provides, in part, that "[t]he [EAB] *may reinstate* a prevailing party into employment with his or her responding agency *and restore all his or her employee rights and benefits* including back pay, medical leave and personal leave." Miss. Employee Appeals Board Administrative Rule 24(A) (emphasis added). The original order of the hearing officer, affirmed by this Court, did reinstate McNeel "to her position, with back pay and benefits . . . ." However, the travel reimbursement and personal-leave credit which McNeel now seeks arose subsequent to that original order. Moreover, Jackson testified at the April 28, 2005, hearing that the MDHS "did check with the State Personnel Board and they said an employee could be located wherever be it 100 miles." Finally, this Court finds that travel reimbursement is not among the benefits available to McNeel. McNeel asserts that because the Mississippi State Employee Handbook lists "travel and expenses" as an employee benefit, the EAB erred in failing to so grant. *See* Miss. State Employee Handbook § 8 at 41. This Court deems McNeel's argument to be inaccurate, as the travel reimbursement referred to in the Mississippi State Employee Handbook pertains to "travel in the performance of an official duty," not mere travel to a county assignment. *Id*. Therefore, this Court finds no error in the circuit court's affirmance of the EAB's decision to order that McNeel be placed in Winston County, without travel reimbursement or personal leave credit. This Court cannot find that the EAB's action was unsupported by substantial evidence, arbitrary or capricious, or in violation of McNeel's statutory or constitutional rights. *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Therefore, this Court concludes that this issue is without merit.

9

**II.    Whether McNeel should be awarded a career-ladder promotion to Social Worker Advanced and/or promoted to Area Social Worker Supervisor.**

¶12.    Prior to her termination in 1999, McNeel applied for both a career-ladder promotion[9] to the position of Social Worker Advanced and a promotion to the position of Area Social Worker Supervisor for the Winston County Department of Human Services. Such promotional opportunities were not reflected in the back pay that McNeel received from the MDHS.

¶13.    Regarding the career-ladder promotion, Stewart testified that she informed McNeel, "I cannot send in [your] application due to you having been a subject of investigation by Program Integrity, therefore, you are not eligible for the information I have received. You may send it in yourself and see what happens." Likewise, according to Jackson, McNeel was ineligible for the career-ladder promotion "[b]ecause of the investigation, the disciplinary action[,]" which culminated in her termination. Other than the investigation, Jackson testified that McNeel would have been qualified for the promotion.[10] At the hearing, Bill McNeel, McNeel's husband and a certified public accountant, was offered and accepted as an accounting expert. Among the exhibits offered and admitted over objection during his testimony was the "Reconstruction of Social Worker Advanced Salary Based on Available

_____

[9]According to Jackson, the career ladder "allows for the employees in a job series such as . . . Social Workers, . . . to . . . remain in their current position and pin number and move in that series by virtue of additional education, experience." In September 1999, the Social Worker positions were reclassified to DHS-Social Worker, DHS-Social Worker Senior, and DHS-Social Worker Advanced.

[10]This aligned with McNeel's testimony that, beyond the investigation, she "met all the requirements to receive the raise and promotion to the position of Social Worker Advanced."

Information." The calculations therein[11] provided that McNeel's total unpaid salary from November 1999 through May 2004 totaled $165,362.70, and when including eight percent interest compounded bi-weekly and a five percent late fee on all principal and interest, the total became $208,302.79. However, John W. O'Bryant, the regional director of the MDHS, testified that several individuals had been denied the career-ladder promotion because "[t]he funding was not there."

¶14. As to the Area Social Worker Supervisor promotion, in October 1999, McNeel was on the list of eligibles along with five or six other individuals. Jackson testified that McNeel was considered for the position, but the promotion was ultimately given to Stewart.[12] McNeel countered that she "was the most qualified applicant" and "[i]f not for the wrongful termination, I believe I would have been promoted to the position . . . ."

¶15. Section 5.04.13 of the Mississippi State Personnel Board Policy and Procedures Manual states that "[a]n individual separated *in good standing* for reasons other than an authorized leave of absence may be *re-employed* into the *same job class* from which terminated." Miss. State Pers. Bd. Policy & Procedures Manual § 5.04.13 (emphasis added). It further provides that "[t]he authorized salary for *re-employment* shall be *no more than the current salary at the time of separation unless salary realignments were effected since the*

---

[11]Bill McNeel testified that these calculations were based upon salary information from the Jackson *Clarion Ledger* because the MDHS "did not give us anything at all to work with."

[12]All individuals on the list of eligibles, with the exception of Stewart, received a score of 100 on their certificate letters. Stewart received a 99. However, according to O'Bryant, that score and the applicant's work experience "are only part of the whole big picture that I would look at in making a recommendation to hire somebody . . . ."

*date of separation.*" *Id*. (emphasis added). However, according to the August 31, 2004, letter to Jackson of Janie Simpson, the Policy Director for the State Personnel Board, "State Personnel Board policies do *not* specifically address *reinstatements* because *the terms of a reinstatement would be decided by the appropriate court.*"[13]  (Emphasis added.)

¶16.    The original order of the hearing officer "*reinstated* [McNeel] to her position, with back pay and benefits, as of the date of termination . . . ." (Emphasis added.)  At the April 28, 2005, hearing, the hearing officer reiterated that McNeel "was *reinstated* with back pay and all benefits.  The benefits *include* any *career ladder advancements* that she would be entitled to, any position that she would have been eligible to . . . any opportunity for promotion. Now, that apparently was not considered." (Emphasis added.)  This finding was reflected in the EAB's determination that McNeel's back pay "should have been calculated as DHS-Social Worker, who is entitled to every advancement . . . offered and granted to DHS-Social Workers during the period of time from November 1999 to and through April 2004."  The EAB added that McNeel should be "given consideration for any promotional opportunity to a County Director's position" in Winston County.  Subsequently, the November 20, 2007, order of the circuit court stated that the issue was remanded to the EAB "for them to clarify what *promotions or advancements* [McNeel] was awarded, if any, by job title, and the specific pay rate from which . . . the back pay that she was awarded is to be calculated."  (Emphasis added.)

---

[13]Likewise, Jackson testified that "the only guideline that we have other than what's in the Court Order to follow in terms of reinstating an employee is what's in the Mississippi State Employee Handbook and . . . I believe in the handbook it does say re[-]employment."

¶17. Because McNeel was reinstated, this Court finds the reemployment provisions in the Mississippi State Personnel Board Policy and Procedures Manual and the Mississippi State Employee Handbook inapplicable. According to Simpson's letter, "the terms of a reinstatement would be decided by the appropriate court." The hearing officer's original order, affirmed by this Court, "reinstated" McNeel "to her position with back pay and benefits . . . ." The nature of said back pay and benefits was clarified by the EAB to include "every advancement . . . offered and granted to DHS-Social Workers during the period of" McNeel's wrongful termination and "consideration for any promotional opportunity to a County Director's position" in Winston County.

¶18. Under Mississippi Employee Appeals Board Administrative Rule 24(A), "[t]he [EAB] *may reinstate* a prevailing party into employment with his or her responding agency *and restore all his or her employee rights and benefits* including back pay, medical leave and personal leave." Miss. Employee Appeals Board Administrative Rule 24(A) (emphasis added). This Court previously has determined that the EAB has the authority to award promotions and to declare a position vacant. *See **Miss. Empl. Sec. Comm'n v. Culbertson***, 832 So. 2d 519, 529-30 (Miss. 2002) ("the EAB clearly had the authority to award promotions and back pay"); ***Shird v. Miss. State Dep't of Health***, 785 So. 2d 275, 279 (Miss. 2001) ("[t]he Court of Appeals erred in not reversing and remanding this case to the EAB with directions to declare two vacancies at the Psychologist I position . . . so that Cummins and Shird may properly be considered for the positions under the rules of the State Personnel Board"); ***Tillmon v. Miss. State Dep't of Health***, 749 So. 2d 1017, 1022 (Miss. 1999) ("[b]y

the plain reading of [Mississippi Code Annotated Section 25-9-131[14]], it is easily inferred that the EAB has the authority to declare the position vacant"). Therefore, this Court agrees with the circuit court that "this issue should be remanded back to the EAB for clarification of" what pay increase(s) and/or advancement(s) were offered and granted to DHS-Social Workers similarly situated to McNeel but for her termination, and determine what, if any, pay increase(s) and/or advancement(s) McNeel would have been entitled to receive. Should the EAB determine that McNeel is entitled to any such pay increase(s) and/or advancement(s), the EAB shall order the MDHS to compensate her accordingly.

### III. Whether McNeel should be compensated for having no Social Security earnings from 2000 through 2003 via MDHS "properly" reporting her back wages to the Social Security Administration.

¶19. McNeel received her back pay in a lump sum in 2004. As the Social Security cap for 2004 was $87,900, McNeel did not receive Social Security contributions on the amount in excess thereof.[15] One exhibit offered and admitted over objection during Bill McNeel's testimony was titled "Social Security Caps." Based thereon, he testified that in "each of the years . . . from 1999 through 2003, her salary would have been well below the caps."[16] He added that the lump-sum payment effectively saved the State $4,757.62 in payroll taxes, while decreasing McNeel's "future Social [S]ecurity . . . anywhere from [$]40 to $50 a month

---

[14]Mississippi Code Annotated Section 25-9-131 provides, in pertinent part, that "[t]he [EAB] may modify the action of the department, agency or institution but may not increase the severity of such action on the employee. Such appointing authority shall promptly comply with the order issued as a result of the appeal to the [EAB]." Miss. Code Ann. § 25-9-131 (Rev. 2006).

[15]By contrast, her Medicare wages and tips totaled $164,926.13.

[16]Between 1999 and 2004, the Social Security cap rose from $72,600 to $87,900.

when she starts drawing Social [S]ecurity."[17] However, Bill McNeel also conceded that there was "*no other way* [the MDHS] could have paid this Social [S]ecurity . . . ." (Emphasis added). By contrast, McNeel herself testified that "[t]here are steps and procedures where [the MDHS] can correct this. These steps are outlined in [IRS] Publication 957."

¶20. While the EAB denied McNeel's request for reimbursement for Social Security taxes, the circuit court found that:

> the EAB's denial of McNeel's request for proper reporting of her back pay to the [SSA], without written opinion, is arbitrary and capricious. The [IRS] has established rules and procedures to follow when reporting back pay so as to not deny someone their [S]ocial [S]ecurity benefits. MDHS should follow these rules and procedures. Therefore, this court finds that the decision of the EAB that denied McNeel's request to have MDHS properly report her back pay to the [SSA] should be reversed.

¶21. According to the MDHS, Social Security taxes "are mandated by the [f]ederal and [s]tate government. It is not a benefit." Furthermore, the MDHS maintains that it followed the Statewide Payroll and Human Resources System ("SPAHRS") program in "calculating McNeel's Social Security taxes" and "only tak[ing] out taxes for the year that the employee received payment[,] which was in 2004." *See* 26 U.S.C. § 3121 (2008). Therefore, the MDHS asserts that, because its action was allowed under the "policies, rules and regulations" of the State Personnel Board, the EAB "shall not alter the action . . . ." Miss. Employee Appeals Board Administrative Rule 24(B). McNeel responds that "[u]nder the law, the [SSA] credits back pay awarded under a statute to an individual's earnings record in the period(s) the wages should or would have been paid."

---

[17]Even Fortner conceded that "[i]t would appear" that the absence of Social Security earnings for 2000 through 2003 will have a negative impact on McNeel when she begins collecting Social Security.

¶22. "If a back pay award is not made under a statute, the SSA credits back pay as wages in the year paid. However, when awarded, the SSA credits back pay awarded under a statute to the year(s) it should have been paid." Internal Revenue Service, http://www.irs.gov/publications/p957/ar02.html (last visited May 27, 2009). "Back pay awarded under a statute is payment by an employer pursuant to an award, determination or agreement approved or sanctioned by a court or government agency responsible for enforcing a federal or state statute that protects an employee's right to employment or wages."[18] *Id.* Statutory back pay includes payment based upon laws "that protect rights to employment and wages." *Id.* Given these definitions, this Court concludes that McNeel received statutory back pay from the MDHS. As such, this Court agrees with the circuit court that "the EAB's denial of McNeel's request for proper reporting of her back pay to the [SSA], without written opinion, is arbitrary and capricious." The MDHS should properly report McNeel's back pay to the SSA pursuant to IRS Publication 957.

## IV. Whether McNeel should be compensated for medical insurance and medical expenses incurred by virtue of her wrongful termination.

¶23. The back pay which McNeel received from the MDHS did not include expenses incurred during the period of her wrongful termination for COBRA and other medical insurance coverage, medical expenses, or prescription drug expenses. As a state employee, McNeel did not have to pay for her individual state health insurance coverage. This coverage included a $350 deductible, 80%/20% co-pay, and a prescription drug plan. From December

---

[18]By contrast, "nonstatutory back pay" is "[a] payment for back wages negotiated between an employer and employee without an award, determination or sanction by a court or government agency . . . ." *Id.*

16

1999 through May 2004, however, McNeel was not provided this employee benefit. For the initial eighteen months, McNeel maintained insurance coverage via COBRA, paying individual monthly premiums of $170 from December 1999 through June 2000 and $196 from July 2000 through May 2001, totaling $3,346. From June 2001 through May 2003, McNeel was self-insured, incurring no expenses for insurance premiums. During this period, McNeel asserted that she would have received benefits totaling $5,281 under the state health insurance plan. In June 2003, McNeel purchased health insurance with a deductible of $2,500 through Gilsbar Insurance. The individual monthly premiums were $278 for six months and $338 for the five months thereafter, totaling $3,358. Additionally, McNeel presented receipts for nearly $1,050 in prescription drug expenses and $578 in medical expenses from the period of her wrongful termination.

¶24. The hearing officer determined that "if she had expended some money, then I think she would be entitled to it." The August 16, 2005, order of the hearing officer, affirmed by the "Full Board Order" of the EAB, specified that "[a]s an employee of the [MDHS], from the date of termination, it is incumbent that [McNeel] be provided the benefit of free medical insurance and if necessary to be *financially reimbursed, if personal funds were expended for medical insurance, during this period of time*." (Emphasis added). The circuit court affirmed, noting that:

> Mississippi Employee Handbook, Section 8, 23-56 (July 2005), lists medical insurance as benefit that is available to Mississippi State Employees. There is substantial evidence in the record to support the full board's affirmance of the hearing officer's decision to *only reimburse McNeel for any personal funds that were expended for medical insurance during her period of termination*. . . . This court will treat the EAB's silence on McNeel's request to be awarded the estimated value of having medical insurance as a denial. *McNeel has not*

17

*presented this court with any authority to support her claim for the estimated value of the benefit of medical insurance. Therefore, this court believes that the EAB's decision to deny McNeel's request for the estimated value [of] having medical insurance should be affirmed.*

(Emphasis added.)

¶25. Mississippi Employee Appeals Board Administrative Rule 24(A) provides, in part, that "[t]he [EAB] *may reinstate* a prevailing party into employment with his or her responding agency *and restore all his or her employee rights and benefits . . . .*" Miss. Employee Appeals Board Administrative Rule 24(A) (emphasis added). The original order of the hearing officer, affirmed by this Court, provided that McNeel is "reinstated to her position, with back pay *and benefits . . . .*" (Emphasis added). Under "Section 8 - Benefits of Being a State Government Employee in Mississippi," the Mississippi State Employee Handbook includes "The State and School Employees' Life and Health Insurance." Miss. State Employee Handbook, § 8 at 23, 43. That subsection provides that the State "pays the entire health insurance premium for all eligible active state employees." *Id*. at 44. Accordingly, this Court concludes that the EAB's decision to reimburse McNeel for personal funds expended on medical insurance during the period of her wrongful termination is supported by substantial evidence.[19] *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Moreover, as McNeel provides no authority for her assertion that she should be reimbursed for the estimated value of the benefit of medical insurance, this Court likewise concludes that the EAB's decision to deny such reimbursement also is supported by substantial evidence.

---

[19]According to Bill McNeel, the actual payments totaled $6,704.

18

¶26. Additionally, however, this Court notes that "[b]enefits of the State and School Employees' Life and Health insurance include . . . : (1) In-Network and Out-of-Network coverage[,] . . . (6) Prescription Drug Plan." Miss. State Employee Handbook, § 8 at 44. McNeel provided documentation of $1,050 in prescription drug expenses and $578 in medical expenses from the period of her wrongful termination. The hearing officer stated that "if she had expended some money, then I think she would be entitled to it." As such, this Court finds that reimbursement of the documented prescription drug and medical expenses was a benefit to which McNeel was entitled. Therefore, this Court remands this case to the EAB to determine if, but for her wrongful termination, any of McNeel's documented prescription drug and medical expenses would have been paid by "The State and School Employees' Life and Health Insurance" plan. If so, the EAB shall order the MDHS to compensate her for same.

**V.  Whether McNeel should be compensated for continuing professional education expenses incurred by virtue of her wrongful termination.**

¶27. The back pay which McNeel received from the MDHS did not include continuing professional education expenses incurred by McNeel during the period of her termination. McNeel testified that prior to her termination she was reimbursed for such expenses, including tuition, mileage, hotels, and meals. She added that since her reinstatement, the MDHS has reimbursed her for mileage associated with attending conferences and "[t]he State actually took care of the hotel expenses . . . ." McNeel presented evidence that the continuing professional education expenses she incurred during the period of her termination totaled $2,031.

19

¶28. Conversely, according to Mangold, "[i]f it's duties and responsibilities that they're required to know or to improve their skills in order to perform their job, then [the MDHS will] reimburse them for those expenses." However, as to expenses incurred by MDHS social workers to meet licensing requirements, Mangold testified that the MDHS does not reimburse. Occasionally, limited scholarship opportunities were available to MDHS social workers. However, in the absence of such scholarships, multiple MDHS employees testified that continuing professional education expenses, including tuition, mileage, and hotel expenses, were the responsibility of the employee. As O'Bryant testified, "[t]hey're allowed time away from their job, but they get no compensation or reimbursement."

¶29. The EAB found that "[c]ontinuing professional education is neither a part of back pay or a benefit, and this request is denied . . . ." The circuit court affirmed, finding "substantial evidence in the record to support this denial."

¶30. Absent exemption, social workers are required to maintain their own licenses. *See* Miss. Code Ann. § 73-53-7 (Rev. 2008). The original order of the hearing officer, affirmed by this Court, provided that McNeel is "reinstated to her position, with back pay *and benefits* . . . ." (Emphasis added.) Reimbursement for continuing professional education expenses is not among the benefits listed in Mississippi Employee Appeals Board Administrative Rule 24(A) or the Mississippi State Employee Handbook. Additionally, the hearing officer was presented with conflicting testimony regarding the provision of continuing professional education expenses by the MDHS. Accordingly, this Court cannot find that the EAB's denial of McNeel's request for continuing professional education expenses was unsupported by substantial evidence, arbitrary or capricious, or in violation of McNeel's statutory or

20

constitutional rights. *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Therefore, this Court concludes that this issue is without merit.

> **VI.     Whether McNeel should receive interest on the back pay owed to her by the MDHS.**

¶31.   The back pay which McNeel received from the MDHS did not include the interest which accrued during the period of her wrongful termination and post-judgment. In McNeel's 1999 "Notice of Appeal Before the Mississippi Employee Appeals Board," her "statement of relief requested" did not include a demand for interest. Throughout that entire original appeal, before the hearing officer, the full board of the EAB, the circuit court, and this Court, McNeel never requested interest. Neither the original order of the hearing officer, nor the affirming opinions of the full board of the EAB, the circuit court, or this Court, referred to interest. Among the exhibits offered and admitted during Bill McNeel's testimony in McNeel's second appeal, presently before this Court, was the "Calculation of Interest on Back Pay Award." The calculations therein provide that McNeel's interest totaled $29,762.12. According to Bill McNeel, the MDHS "lost every appeal process from all the way last time. They . . . had no incentive whatsoever to resolve the issues from 1999. And this thing did drag on until April of 2004 and, also, the [s]tate law I think provides that they should pay interest."[20]

_____

[20]Bill McNeel added that "during the time she was unemployed we had to borrow monies . . . to compensate for her not having her job and . . . we had to pay interest to our lenders and banks." Additionally, Fortner testified that the late-deposited PERS contributions included interest. Bill McNeel asked "why should PERS get interest in penalties and we not get it in the same case[?]"

21

¶32.    The EAB found that McNeel "is not entitled to interest on her back pay; *the payment of interest as set out in Section 75-17-1 of the Mississippi Code of 1972, Annotated, does not apply to the State o[r] political subdivisions*."   (Emphasis added.)   The circuit court disagreed, finding that this Court "has held that absent statutory authority . . . prohibiting the State of Mississippi and its political subdivisions from paying interest, the State and its political subdivisions shall be liable for such payment." *See **City of Jackson v. Williamson***, 740 So. 2d 818, 820-23 (Miss. 1999).   Concluding that the MDHS failed to cite any such prohibitory statutory authority or case law, the circuit court found that the EAB had erred as a matter of law.   The circuit court then determined that Mississippi Code Annotated Section 75-17-7 "seems clear . . . that the Legislature intended for the judge who hears the complaint to be the one that decides interest issues."   Deeming hearing officers to be administrative law judges, the circuit court found "they would qualify as judges for purposes of Miss. Code Ann. Section 75-17-7."   Therefore, regarding prejudgment interest, the circuit court reversed and remanded for a determination by the hearing officer of whether such an award was proper and, if so, the appropriate rate.   The circuit court further decided that post-judgment interest "is a statutory right" under Mississippi Code Annotated Section 75-17-7, and reversed and remanded for a determination of the post-judgment interest rate which McNeel shall receive on her back pay award.

¶33.    The MDHS now argues that interest is not a benefit cited in either Mississippi Employee Appeals Board Administrative Rule 24(A) or the Mississippi State Employee Handbook.   Therefore, according to the MDHS, the imposition of interest on the back pay award is impermissible because the EAB "may not alter compensation paid to an employee

22

if the agency followed rules and regulations of the State Personnel Board." *See* Miss. Employee Appeals Board Administrative Rule 24(B). Reiterating the position of the circuit court, McNeel responds that "absent particular statutory authority from the Legislature prohibiting the State . . . and its political subdivisions from paying interest, the State and its political subdivisions shall be liable for such payment." *See Williamson*, 740 So. 2d at 820-23. McNeel adds that "[t]he State and its political subdivisions are not excluded in the wording of [Mississippi Code Section 75-17-7]. If a party is not specifically excluded, it must be included."

¶34. This Court finds that the EAB erred in stating that "the payment of interest as set out in Section 75-17-1 of the Mississippi Code of 1972, Annotated, does not apply to the State o[r] political subdivisions." In *Williamson*, this Court stated that:

> the specific language of Rule 37 of the Mississippi Rules of Appellate Procedure shifts the burden to the State and its political subdivision to provide explicit statutory exceptions to the new general rule that the State and [its] political subdivisions must pay the same costs and interest as individual or corporate appellants who lose their appeals.

*Williamson*, 740 So. 2d at 822-23. The EAB was authorized to impose interest on the back-pay award against the MDHS. Furthermore, this Court agrees with the circuit court that post-judgment interest in the case *sub judice* is mandated by Mississippi Code Annotated Section 75-17-7. That section provides:

> [a]ll judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. *All other judgments shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.*

Miss. Code Ann. § 75-17-7 (Rev. 2000) (emphasis added). This Court has stated that "post-judgment interest is a statutory right . . . ." ***Miss. Dep't of Mental Health v. Hall***, 936 So. 2d 917, 929 (Miss. 2006) (quoting ***U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis***, 825 So. 2d 38, 50 (Miss. 2002)). Therefore, "[d]ue to the mandatory nature of § 75-17-7 and because public policy heavily favors post-judgment interest," ***Hall***, 936 So. 2d at 930, this Court concludes that McNeel is entitled to post-judgment interest.

¶35. However, McNeel never requested prejudgment interest at any point in the original appeal, and neither the original order of the hearing officer, nor the affirming opinions of the full board of the EAB, the circuit court, or this Court, referred to interest. "For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings . . . ." ***Moeller v. Am. Guar. and Liab. Ins. Co.***, 812 So. 2d 953, 958 (Miss. 2002) (quoting ***Preferred Risk Mut. Ins. Co. v. Johnson***, 730 So. 2d 574, 577 (Miss. 1998)). Additionally, this Court has stated that:

> [a]ccording to the mandate rule, . . . a mandate issued by this Court "'is binding on the trial court on remand, unless the case comes under one of the exceptions to the law of the case doctrine.'" [***Moeller***, 812 So. 2d at 960 (quoting ***Simpson v. State Farm Fire & Cas. Co.***, 564 So. 2d 1374, 1377 (Miss. 1990))]. These exceptions include "'material changes in evidence, pleadings or findings,'" ***Moeller***, 812 So. 2d at 960 (quoting ***Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.***, 244 Miss. 465, 480, 142 So. 2d 200, 207 (1962)), and "the need for the Court to 'depart from its former decision' 'after mature consideration' so that 'unjust results' will not occur." ***Moeller***, 812 So. 2d at 961 (quoting ***Brewer v. Browning***, 115 Miss. 358, 364, 76 So. 267, 269 (1917)).

***Pub. Empl. Ret. Sys. v. Freeman***, 868 So. 2d 327, 330 (Miss. 2004). As the basis for the EAB's denial of interest on McNeel's back pay was legally erroneous, this Court remands for further consideration. On remand, the EAB, acting pursuant to Mississippi Code

24

Annotated Section 75-17-7, shall determine the post-judgment interest rate to which McNeel

is entitled. As to prejudgment interest, however, this Court finds that any such award by the

EAB is foreclosed by both McNeel's waiver of such claim and the mandate rule.[21]  *See id*.;

*Moeller*, 812 So. 2d at 958.

> ### VII.  Whether McNeel should be compensated for legal fees incurred by virtue of her wrongful termination.

¶36.     McNeel sought to be reimbursed for "attorney fees and expenses in connection with

[her] appeals" totaling $26,394.88 (including interest).  In denying McNeel's request, the

EAB found that "[t]he EAB's jurisdiction is set out by statute; the statute does not provide

---

[21]This Court adds that Mississippi Code Section 11-3-23 is inapplicable in the case *sub judice*.  Section 11-3-23 provided for a mandatory penalty for pursuing an unsuccessful appeal in cases of unconditional affirmances, stating, in pertinent part, that:

> [i]n case the judgment or decree of the court below be affirmed, . . . the Supreme Court shall render judgment against the appellant for damages, at the rate of fifteen percent (15%), as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum.

Miss. Code Ann. § 11-3-23 (Rev. 2002).  *See also* **Prime RX, LLC v. McKendree, Inc.**, 917 So. 2d 791, 798 (Miss. 2005) (citing **Greenlee v. Mitchell**, 607 So. 2d 97, 112 (Miss. 1992) ("[t]he statutory penalty applies only to unconditional affirmances.").  Section 11-3-23, however, was repealed by House Bill 19, 2002 Mississippi Laws Third Extra Session Chapter 4 (H.B. 19) which was effective "from and after January 1, 2003, and shall apply to all *causes of action filed on or after that date*."  (Emphasis added.)  *See also* **Superior Car Rental, Inc. v. Roberts**, 871 So. 2d 1286, 1288 (Miss. 2004) ("the repeal of Miss. Code Ann. § 11-3-23 applies to all cases commenced in a trial court on or after January 1, 2003.").  The present cause of action, Cause Number 2007-CC-2189-SCT, commenced with the EAB following this Court's decision in Cause Number 2002-CC-1948-SCT on April 8, 2004. While the present cause of action is clearly interrelated with that previous cause of action, under which Section 11-3-23 would apply, the plain language of the repeal forecloses its application in Cause Number 2007-CC-2189-SCT.  However, this Court notes that McNeel may be entitled to the retroactive application of Section 11-3-23 in Cause Number 2002-CC-1948-SCT, as the penalty is mandatory and the affirmances therein were unconditional. That said, McNeel has never filed any motion to amend that prior mandate of this Court.

authority to award court cost[s], out of pocket costs, or attorney fees . . . ." The circuit court affirmed, determining that "[t]he [EAB] does not have the authority to award attorneys' fees."

¶37. In *Culbertson*, this Court stated that "[t]he EAB is a creature of statute, and nowhere in the statutory scheme is the EAB empowered to award attorneys' fees." *Culbertson*, 832 So. 2d at 530. Specifically, "the EAB has only limited authority under Miss. Code Ann. § 25-9-131 (1999), and . . . the awarding of attorneys' fees is not one of its enumerated powers." *Id*. at 532. Based thereon, this Court cannot find that the EAB's denial of McNeel's request for reimbursement of legal fees was unsupported by substantial evidence, arbitrary or capricious, or in violation of McNeel's statutory or constitutional rights. *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Therefore, this Court concludes that this issue is without merit.

### VIII. Whether McNeel should be compensated for legal fees incurred regarding her unemployment benefits.

¶38. McNeel argues that "[t]he net amount of the unemployment benefits after the attorney fees of having representation at the appeal are deducted would be $2,440.00 (4,940.00 minus 2,500.00)." She seeks reimbursement for these legal fees. As in Issue VII., *supra*, the MDHS responds that such relief is foreclosed because the EAB is not authorized to award attorneys' fees.

¶39. The circuit court characterized this request as "nothing more than a request for attorneys' fees . . . . Obtaining an attorney to represent her before the Mississippi Employment Security Commission was entirely McNeel's choice." As the EAB lacks

26

authority to award attorneys' fees, *see* Issue VII., *supra*, the circuit court affirmed the EAB's denial of McNeel's request. This Court agrees and, therefore, cannot find that the EAB's denial of McNeel's request for reimbursement of legal fees associated with her unemployment benefits was unsupported by substantial evidence, arbitrary or capricious, or in violation of McNeel's statutory or constitutional rights. *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Therefore, this Court concludes that this issue is without merit.

### IX. Whether McNeel should be compensated for additional income taxation incurred by virtue of her wrongful termination.

¶40. McNeel presented evidence at the hearing that the lump-sum payment she received from the MDHS placed her in a markedly higher tax bracket than if she had been paid in the individual years between 1999 and 2004. In fact, according to Bill McNeel's calculations,[22] the difference amounted to increased federal and state income tax of $24,866.

¶41. The EAB determined that McNeel "was not entitled to any reimbursement . . . due to the state and federal taxes on the back pay lump sum payment." The circuit court affirmed, finding that McNeel "has not cited any relevant authority that would lead this court to believe her constitutional or statutory rights were violated by the full board's denial of this reimbursement."

¶42. Similar to its argument in Issue III., *supra*, the MDHS maintains that it abided by the SPARHS program in calculating McNeel's back pay, and "an employee is taxed by the year that she may receive payment from her employer." *See* 26 U.S.C. § 3121 (2008). As

---

[22]Bill McNeel noted that these calculations included the presupposition of "married filing separate because this does not include any of my income."

"reimbursement for income taxes is not relief that can be awarded under Rule 24(A)[,]" the MDHS asserts that its allowable action under the "policies, rules and regulations" of the State Personnel Board should not be altered by the EAB. Miss. Employee Appeals Board Administrative Rule 24(B)).

¶43. According to the IRS, "for income tax purposes, the IRS treats all back pay as wages *in the year paid*." Internal Revenue Service, http://www.irs.gov/publications/p957/ar02.html (last visited May 27, 2009) (emphasis added). As such, this Court cannot find that the EAB's denial of McNeel's request for income-tax reimbursement was unsupported by substantial evidence, arbitrary or capricious, or in violation of McNeel's statutory or constitutional rights. *See* Miss. Code Ann. § 25-9-132(2) (Rev. 2006). Therefore, this Court concludes that this issue is without merit.

> **X.      Whether all monies owed to McNeel should be calculated by a capable accounting firm or the Mississippi State Auditor's Office.**

¶44. The circuit court deemed the EAB's silence on this issue to constitute a denial, then found that McNeel "presented no authority in support of her proposition . . . [t]herefore, this court believes the full board's denial should be affirmed."

¶45. On cross-appeal, McNeel again presents no authority in support of her argument, merely maintaining that:

> [t]his is a very complex case and the award must be broken down into categories and signed off by the court before the [SSA] can process it. . . . MDHS does not have the expertise to calculate these amounts correctly and the burden of calculating these amounts should not fall on McNeel.

Moreover, the MDHS correctly notes that by utilizing the SPAHRS program in calculating McNeel's back pay, they "acted in accordance with the published policies, rules and

28

regulations of the State Personnel Board . . . ." Miss. Employee Appeals Board Administrative Rule 24(B). As such, because the EAB's action "is allowed under said policies, rules and regulations, the [EAB] *shall not alter the action taken by the agency . . . ." Id*. (emphasis added). Since the EAB's denial of McNeel's request for an independent calculation was supported by substantial evidence, not arbitrary or capricious, and not in violation of McNeel's statutory or constitutional rights, *see* Mississippi Code Section 25-9-132(2), this Court concludes that this issue is without merit.

## CONCLUSION

¶46. Based upon the aforementioned analysis, this Court affirms the EAB's denial of McNeel's request for travel reimbursement and personal-leave credit, continuing professional education expenses, reimbursement of legal fees (including those associated with her unemployment benefits), reimbursement for additional income taxation, and an independent calculation of the monies owed. This Court further affirms the EAB's decision to reimburse McNeel for personal funds expended on medical insurance during the period of her wrongful termination.

¶47. This Court reverses the EAB's decision regarding reporting of McNeel's back pay to the Social Security Administration. The MDHS is required to properly report McNeel's back pay to the SSA pursuant to IRS Publication 957. Furthermore, this Court reverses and remands to the EAB on the issue of post-judgment interest. On remand, the EAB, acting pursuant to Mississippi Code Section 75-17-7, shall determine the post-judgment interest rate to which McNeel is entitled. As to prejudgment interest, any such award by the EAB is foreclosed both by McNeel's waiver of such claim and by the mandate rule. Additionally,

on remand, the EAB shall clarify what pay increase(s) and/or advancement(s) were offered and granted to DHS-Social Workers similarly situated to McNeel but for her termination, and determine what, if any, such pay increase(s) and/or advancement(s) McNeel would have been entitled to receive. Should the EAB determine that McNeel is entitled to any such pay increase(s) and/or advancement(s), the EAB shall order the MDHS to compensate her accordingly. Finally, the EAB shall render a reimbursement determination regarding whether, but for her wrongful termination, any of McNeel's documented prescription drug and medical expenses would have been paid by "The State and School Employees' Life and Health Insurance" plan. If so, the EAB shall order the MDHS to compensate her for same.

¶48. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**