# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01522-SCT

*MISSISSIPPI DEPARTMENT*
*OF MENTAL HEALTH*

*v.*

*JULIA RENEE HALL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2004 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EUGENE M. HARLOW |
| ATTORNEY FOR APPELLEE: | GEORGE L. FOLLETT |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 08/24/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., WALLER, P.J., AND DICKINSON, J.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Julia Renee Hall filed a complaint against the East Mississippi State Hospital,[1]

alleging that, while she was a patient at East Mississippi, she sustained serious injuries after

falling from a third-story window.  After conducting a bench trial pursuant to the Mississippi

Tort Claims Act, Miss. Code Ann. §§ 11-46-1 through -23 (Rev. 2002), the Lauderdale

---

[1]The East Mississippi State Hospital is a psychiatric facility operated by the
Mississippi Department of Mental Hospital.

County Circuit Court entered a judgment against East Mississippi in the amount of $250,000. We affirm the circuit court's judgment in all respects.

**FACTS**

¶2.     Julia Renee Hall, who was 25 years old at the time of the accident, has been institutionalized at different mental health facilities since she was 13 years old. Her latest admitting diagnosis was schizophrenia, disorganized type, borderline; and borderline personality disorder. Her discharge diagnosis from her last stay at East Mississippi[2] was Axis One: schizoaffective disorder, bipolar type; alcohol dependency, in remission; amphetamine abuse, in remission; cannabis abuse, in remission; Axis Two: borderline personality disorder. She has been civilly committed to East Mississippi on four different occasions.

¶3.     On June 4, 2001, Hall became convinced that she would be transferred to the "back building," a facility for chronically ill patients. Hall and other patients believed that the back building was an area where violence and abuse run rampant among the patients and where there was little to no hope for recovery. Angela Eason, a staff member, filed the following report about what occurred the afternoon of June 4:

> Pam Johnson and I took the patients out for a smoke break at 5:00 o'clock, 1700. . . .
>
> When these patients finished smoking, we returned to the unit on the elevator where the patients started talking about the back building and asking why would a patient get sent to those buildings. I explained it's usually they can't be stabilized on medications or patients that just keep on cycling through the system time and time again.

---

[2]The accident occurred on June 4, 2001. Her discharge date was March 8, 2002.

2

Julia Hall then laughed and said, You mean like me? I then said, I haven't heard your name come up about going to the back building, but you do keep moving up and down between second (a less restrictive ward) and third and you need to get it together. You are too young to be institutionalized all your life.

¶4. When they returned to the third-floor ward, Hall was "hysterical" and "crying" because she thought that the staff was going to transfer her to the back building. Patients Amanda Neal and Regina O'Bryant told Hall that they had a plan in place to escape and coaxed Hall to join them. Neal and O'Bryant's plan was to escape through a third-story window in the all-purpose conference room which adjoined the nurses' station. The door to the room was not locked, and there was no security screen on the window. The window was inoperable, but the women somehow removed a window pane. The group took sheets from a linen closet on the floor which was also unlocked. They entered and exited the conference room several times before Hall actually went out the window and began climbing down a "rope" created by tying the sheets together. Hall lost her footing and fell to the ground. She suffered multiple fractures of the right leg, necessitating eight surgeries so far. Her right foot and heel have become infected several times due to soft tissue damage. She has undergone bone and skin grafts. At the time of the hearing, her right foot and lower leg were swollen and appeared to be deformed, and she noticeably limped. The circuit judge found that Hall would "never be able to hold gainful employment of any consequence for the rest of her life," and that "she has a future of probable repeated and long-term mental health treatment in institutions."[3]

---

[3]Prior to the accident, the Social Security Administration had declared Hall disabled due to her mental impairments.

¶5.     The circuit judge found that $1,000,000 for actual and compensatory damages[4] was appropriate.  He allocated fault as follows:  East Mississippi, 50%; Hall, 25%; Neal, 12-1/2%; and O'Bryant, 12-1/2%.  Then, applying the cap on compensatory damages as set out in Miss. Code Ann. §11-46-15 (Rev. 2002),[5] the circuit judge entered a judgment against East Mississippi in the amount of $250,000.  East Mississippi appealed.

## DISCUSSION

¶6.      "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence."  ***City of Jackson v. Internal Engines Parts Group, Inc.***, 903 So. 2d 60, 63 (Miss. 2005) (citing ***City of Jackson v. Perry***, 764 So. 2d 373, 376 (Miss. 2000)).  Questions of law are reviewed de novo.  ***Internal Engines***, 903 So. 2d at 63 (citing ***Maldonado v. Kelly***, 768 So. 2d 906, 908 (Miss. 2000)).

### I.     WHETHER EAST MISSISSIPPI HAD A DUTY TO PREVENT HALL FROM HARMING HERSELF BY ATTEMPTING TO ESCAPE THROUGH THE THIRD STORY WINDOW.

¶7.     To prevail on a negligence claim, a plaintiff must establish by a preponderance of the evidence each of the elements of negligence:  duty, breach, causation and injury.  ***Miss. Dep't of Transp. v. Cargile***, 847 So. 2d 258, 262 (Miss. 2003).  The cause of Hall's injuries was

---

[4]The circuit judge ruled that the compensatory damages consisted of "past, present and future reasonable medical expenses, pain and suffering, disability, disfigurement, and the like."

[5]The statutory limitation of liability in effect at the time of Hall's accident was $250,000.  Miss. Code Ann. § 11-46-15 (Rev. 2002).

4

her fall from the third-story window, and the parties stipulate to Hall's injuries. Therefore, at issue is whether East Mississippi had a duty to prevent Hall from harming herself by attempting to escape through the third-story window and whether that duty was breached.

*Standard of Care for Patients with Mental Impairments*

¶8.     A state facility providing mental health care is statutorily mandated to provide "proper care and treatment, best adapted, according to contemporary professional standards." Miss. Code Ann. § 41-21-102 (Rev. 2005). Neither the Legislature nor Mississippi courts have defined "contemporary professional standards," but, in dicta, this Court, speaking through the learned Presiding Justice Banks, commented, "[p]ersons deemed incapable of making rational judgments, such that they must be committed, are not to be protected by a lesser standard than reasonable care under the circumstances." *Carrington v. Methodist Med. Ctr., Inc.*, 740 So. 2d 827, 829-30 (Miss. 1999). In Texas, "[a] hospital is under a duty to exercise reasonable care to safeguard the patient from any known or reasonably apprehensible danger from herself and to exercise such reasonable care for her safety as her mental and physical condition, if known, may require." *Mounts v. St. David's Pavilion*, 957 S.W.2d 661, 663 (Tex. Ct. App. 1997).[6]

_____

[6]*See also* ***Tomfohr v. Mayo Found.***, 450 N.W.2d 121, 124 (Minn. 1990) (a hospital voluntarily undertakes the duty to protect the patient from self-inflicted injury, it had assumed a duty to exercise reasonable care to prevent the event.); ***Cowan v. Doering***, 545 A.2d 159, 162 (N.J. 1988) (under certain circumstances, a hospital has the duty to exercise reasonable care to prevent patients from engaging in self-damaging conduct); ***Kent v. Whitaker***, 58 Wash. 2d 569, 364 P.2d 556, 557 (1961) (where patient with known suicidal tendencies strangled herself with plastic tubing while unattended in locked room concerned "failure of the specific duty of exercising reasonable care to safeguard and protect a patient with known suicidal tendencies from injuring herself").

¶9. The Texas standard of care for the duty a hospital owes to a patient is similar to what we enunciated in *Carrington*. It is flexible in that the duty owed to patients may increase depending on the physical or mental condition of the patient. It can therefore be applied to different fact situations. We therefore adopt the Texas standard of care.

*Duties Owed to Hall*

¶10. Wood Hiatt, M.D., a board-certified psychiatrist,[7] testified that East Mississippi had the duty to protect patients from the consequences of their own dangerous behavior, to lock doors to rooms where a patient could be present without supervision, and to put safety screens on windows in rooms where a patient could be present without supervision. Dr. Hiatt also testified that East Mississippi staff was required to know the location of each patient and the actions in which each patient was engaged. Hall had attempted suicide in March of 2001, and she should have been under "special observation." The May 15, 2001, progress notes concerning Hall state that Hall was a "danger to herself and others." Hall became argumentative with a staff member on May 31 and was placed on the third-floor ward, which was a locked unit.

¶11. Dr. Hiatt further testified that East Mississippi breached the above-referenced duties by allowing third-floor ward patients to freely enter and leave an unlocked room without supervision, to have access to the linen closet, and to be without supervision long enough to take sheets out of the linen closet, make a rope out of the sheets, pry the window open in the

---

[7]Dr. Hiatt was a consultant for the East Mississippi adolescent unit, a position which required weekly visits. He had never, however, visited the unit from which Hall attempted her escape.

6

conference room, take off their pajamas and put on regular clothes, attach the rope to a table in the conference room, and climb out the window. What astounds the Court is that the three women were coming in and out of the supposedly off-limits conference room which was right next to the nurse's station. Also, each patient was to be checked every thirty minutes. Whoever staffed the nurse's station or monitored the patients during these events should have become suspicious about the women's activities. Someone should have noticed that the three women had pajamas on and then they changed into regular clothes. Hall testified that most of the nurse's aides were "watching television."

¶12. We find, as the circuit court did, based on Dr. Hiatt's testimony, East Mississippi breached the duties of care owed to Hall.

*Foreseeability*

¶13. East Mississippi contends that it committed no negligent acts because Hall's injury was unforeseeable. It states that the door to the conference room was "inadvertently" unlocked and that the window in the conference room was "non-operable" and "non-opening." Therefore, East Mississippi argues, the only foreseeable action on the part of a patient would have been to have been in the room without supervision and not for that patient to pry the glass panes out of the window in an attempt to escape. Several members of the East Mississippi nursing staff testified that they never considered the conference room to be an escape risk and that they never thought a patient would attempt to escape out a third-story window. Furthermore, East Mississippi claims it had no reason to consider Hall to be an escape risk or to require closer supervision. Finally, East Mississippi cites Mississippi

7

precedent which holds that, to be held negligent, an injury must be "reasonably foreseeable." ***Rein v. Benchmark Constr. Co.***, 865 So. 2d 1134, 1143 (Miss. 2004).

¶14. In response, Hall points out that, under ***Gulledge v. Shaw***, 880 So. 2d 288, 293 (Miss. 2004), the fact that an injury rarely occurs, or has never happened, is insufficient to protect the actor from a finding of negligence.

¶15. The evidence adduced at trial supports the circuit judge's finding that Hall's escape attempt and injuries were foreseeable. Patricia Dudley, M.D., an East Mississippi staff psychiatrist, testified that it is common knowledge that patients will try to climb out windows; a staff nurse testified that any rooms where patients could be present without supervision should have security screens on the windows (all of the patients' rooms had security screens); and another staff psychiatrist testified that the staff was aware that patients would try to leave the third floor ward. Finally, Dr. Hiatt testified that mental hospital staff should know that psychiatric patients will attempt to escape.

¶16. The circuit court found that East Mississippi had a duty to keep unsupervised rooms locked, to place safety screens on windows in unsupervised areas, and to monitor patients' activities, that East Mississippi breached these duties on the night in question, and that the injuries suffered by Hall were reasonably foreseeable. We find that the circuit court's findings were supported by substantial and credible evidence.

## II. WHETHER EAST MISSISSIPPI IS IMMUNE FROM LIABILITY UNDER THE MISSISSIPPI TORT CLAIMS ACT.

8

¶17.    The parties do not contest that East Mississippi, as a state hospital, is a "governmental entity" for purposes of the Mississippi Tort Claims Act.  Miss. Code Ann. §§ 11-46-1 through -23 (Rev. 2002).  The MTCA cloaks governmental entities and state employees with immunity "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."  Miss. Code Ann. § 11-46-9(d) (Rev. 2002).  A duty is ministerial and not discretionary if it is imposed by law and its performance is not dependent on the employee's judgment.  *Cargile*, 847 So. 2d at 267 (citing ***Mohundro v. Alcorn County***, 675 So. 2d 848, 853 (Miss. 1996)).

¶18.    Hall's expert witness testified at trial that East Mississippi's (1) failure to check the third-floor conference room door to see if it was locked; (2) failure to install a security screen on the third floor window; and (3) failure to monitor adequately its patients housed on a locked ward constituted violations of the applicable standard of care.  East Mississippi argues that these failures to act were discretionary functions and dependent upon its employees' judgments, and therefore it is immune from liability under the MTCA.  It states that there was no written policy, rule or standard which required the conference room to be locked when not in use, which required security screens to be placed on non-patient rooms, or which required the staff to monitor continuously the patients.  Also, it contends that the monitoring and supervision on the third-floor unit required the use of judgment and discretion depending upon the individual patients, the staff's knowledge of the patients, and the activities of the patients and the staff at any given time.  East Mississippi cites the

9

definition of "ministerial function" from *Black's Law Dictionary* 996 (6th ed. 1990): "a function as to which there is no occasion to use judgment or discretion."

¶19. Hall responds that Mississippi case law has set out a two-part analysis in determining whether a governmental function is discretionary or ministerial: (1) whether the activity involves an element of choice or judgment (whether the act is discretionary in nature); and, if so, (2) whether the choice or judgment involves social, economic, or political policy alternatives (whether the act constituted a discretionary function). *Doe v. State ex rel. Miss. Dep't of Corrs.*, 859 So. 2d 350, 356 (Miss. 2003) (citing *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001)). *Doe* also held that duties are ministerial if they are imposed by law, and performing them is not dependent on the employee's judgment. 859 So. 2d at 356. Hall points out that the duties involved in this case (supervision of patients, locking doors to rooms where patients may be unsupervised, and installing security screens in rooms where patients may be unsupervised) are not matters of social, economic or political policy alternatives. Therefore, Hall concludes, these duties are not discretionary.

¶20. East Mississippi is required by statute to provide patients with mental health care and treatment in accord with contemporary professional standards. Miss. Code Ann. § 41-21-102(6) (Rev. 2005). Adhering to the mandates of this statute is not discretionary, and, therefore, it is ministerial. Dr. Hiatt testified that contemporary professional standards dictate that: (1) the doors to rooms where a patient might be present and unsupervised should be locked; (2) security screens should be placed on windows in rooms where a patient might be

present and unsupervised; and (3) patients should be monitored in a way so that any out-of-the-ordinary actions on the part of the patients might be detected.

¶21.    We find that the duties East Mississippi owed to its patients were not discretionary and that the discretionary function immunity provisions of the Mississippi Tort Claims Act do not shield East Mississippi from liability in this matter.

### III.    WHETHER THE ACTIONS OF HALL AND THE OTHER TWO WOMEN RELIEVED EAST MISSISSIPPI OF LIABILITY AND WHETHER THE CIRCUIT COURT'S ALLOCATION OF 50% FAULT TO EAST MISSISSIPPI WAS TOO HIGH.

¶22.    The circuit judge allocated 25% of the fault to Hall, 25% to Neal and O'Bryant (12-1/2% each), and 50% to East Mississippi. East Mississippi argues that all fault should be laid at Hall's feet because: (1) her actions were intentional; (2) she knew she should not have been in the unsupervised conference room; and (3) she intentionally attempted to avoid personnel in the escape attempt. East Mississippi concludes, without citing any case law, that it "should not be held liable for [Hall's] poor judgment." Alternatively, East Mississippi argues that the allocation of 50% fault to East Mississippi was too high.

¶23.    One of the reasons Hall was committed to East Mississippi was her poor judgment. Her medical records show that she was highly impulsive and reckless. She had attempted suicide on prior occasions. Her condition would deteriorate from time to time so that it was necessary to move her to the third-floor locked ward for her own safety. The civil commitment order stated that Hall was a danger to herself and to others and that Hall's

11

behavior was "sometimes irrational and often described as 'childlike.'"[8]  It was East Mississippi's duty to care and to provide a safe environment for a person who, because of her mental impairments, could not take very good care of herself.

¶24.  That the three women entered and departed from the third-floor conference room adjacent to the nurses' station several times within a short time, changed from pajamas to street clothes, broke a window pane, and transported a rope made out of sheets to the conference room without detection shocks the Court's conscience.  A review of Hall's testimony at the bench trial clearly shows the severity of Hall's mental impairments.  An allocation of 50% fault to East Mississippi is a very conservative estimate of the extent of its negligence in caring for Hall.  We find the circuit court's allocation of fault is supported by substantial evidence.

### IV.    OTHER POSSIBLE BARS TO LIABILITY.

¶25.  East Mississippi argues that Miss. Code Ann. § 11-46-9(1)(m) (Rev. 2002) provides it with immunity.  The statute provides as follows:

> (1)    A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> * * *
>
> (m)    Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such

---

[8]To involuntarily commit a person to a mental institution, a court must find by clear and convincing evidence that the person is mentally ill and that "involuntary commitment is necessary for the protection of the patient or others."  Miss. Code Ann. § 41-121-83 (Rev. 2005).

12

institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed; . . .

East Mississippi contends that "other such institution" may be interpreted as a state mental hospital. However, subsection (m) clearly pertains to penal institutions.

¶26. East Mississippi also claims that Hall was not entitled to recover damages because she was injured during the performance of an illegal act pursuant to Miss. Code Ann. §§ 97-9-25 (Rev. 2000) and 11-46-9(1)(f) (Rev. 2002). A mental patient's attempted escape is not a criminal act. This claim is without merit.

## V. WHETHER THE CIRCUIT COURT ERRED IN DENYING IN PART EAST MISSISSIPPI'S MOTION IN LIMINE.

¶27. Gwendolyn Hardaway was a patient advocate[9] at East Mississippi at the time of the accident. She conducted an investigation, interviewed many witnesses and wrote a report. East Mississippi filed a motion in limine to prevent Hardaway from testifying at the trial and to bar the introduction of her report into evidence. The circuit court granted that part of the motion in limine which pertained to the report, finding it was confidential and privileged under Miss. Code Ann. § 41-63-21 (Rev. 2005). However, the circuit court held that a patient advocate was not subject to any privilege and that Hardaway could testify. East Mississippi contends that Hardaway was, in essence, a quality assurance officer and was thus

_____

[9]Hardaway testified that a patient advocate protects the rights of patients and investigates any allegations of abuse, neglect or exploitation.

subject to Miss. Code Ann. § 41-63-23 (Rev. 2005), which provides in pertinent part as follows:

> No person involved in preparation, evaluation or review of accreditation or quality assurance materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation or quality assurance or other person involved therein.

¶28.    The circuit court found that a patient advocate's primary duties were to protect vulnerable adults and to investigate allegations of abuse, neglect or exploitation. Hardaway also testified that patients had specific rights guaranteed by statute and by East Mississippi, and had civil rights. Her purpose was to respond to reports and determine whether a patient's rights had been violated or if the patient had been abused, neglected or exploited. We find that the circuit court's denial in part of the motion in limine was not an abuse of discretion. *See Poole v. Avara*, 908 So. 2d 716, 721 (Miss. 2005) ("The standard of review for the admission or suppression of evidence . . . is abuse of discretion."). Hardaway's function was to protect Hall's rights as a patient, not to participate in accreditation or quality assurance.

      **VI.    WHETHER THE CIRCUIT COURT ERRED IN ALLOWING AN EXPERT WITNESS IN THE FIELD OF PSYCHIATRY TO TESTIFY AS TO HALL'S PHYSICAL INJURIES AND FUTURE MEDICAL EXPENSES.**

¶29.    East Mississippi objects to Dr. Hiatt's testimony as to Hall's physical injuries and what medical expenses she might incur in the future. It contends that Dr. Hiatt, who had practiced family medicine in the past, was not an expert in orthopedics, infectious disease,

14

vascular medicine, pain management or neurology. He never examined Hall, but testified after reviewing her medical records and photographs of her leg.

¶30. East Mississippi fails to note, however, that Dr. Hiatt served as a general medical officer in the U. S. Air Force, had served as a flight surgeon for the Mississippi Air National Guard, and had performed or assisted in numerous orthopedic surgeries. He was familiar with the use of antibiotics and how they treat infections.

¶31. Rule 702 of the Mississippi Rules of Evidence provides that expert testimony must be based upon sufficient facts or data; the testimony must be the product of reliable principles and methods; and the witness must have applied the principles and methods reliably to the facts of the case. *Poole*, 908 So. 2d at 722. "Scientific knowledge means something more than unsupported speculation or subjective belief that is grounded in methods and procedures of science. *Id.* at 723 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), *superceded by* F.R.E. 702). Also, "[u]nlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. This Court has held that, "[a]bsent other grounds to exclude, an expert's testimony is presumptively admissible when relevant and reliable." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 39 (Miss. 2003). The basic threshold for admitting an expert's opinion is whether the testimony is "based on scientific knowledge which would assist the trier of fact to understand or determine a fact at issue." *Poole*, 908 So. 2d at 724 (citing *Daubert*, 509 U.S. at 592).

¶32. Dr. Hiatt testified that Hall suffered extensive orthopedic injuries, extensive soft tissue damage, and a string of infections. He pointed out that, after her hospitalization immediately following the accident, Hall was hospitalized several times for infections. He opined that, because of the nature of the soft tissue damages and the recurring infections, it was reasonable to assume that Hall would undergo additional treatment requiring hospitalization and possibly an amputation.

¶33. We find that Dr. Hiatt's testimony was admissible under M.R.E. 702. The testimony was not based on any new or untested medical theories, but merely on his lengthy experience as a physician. All his testimony was based on facts found in extensive medical records; therefore it was reliable. The testimony assisted the trier of fact (here, the circuit judge); therefore, it was relevant.

## VII. WHETHER THE CIRCUIT COURT ERRED IN FAILING TO ADMIT INTO EVIDENCE AN ERRATA SHEET PERTAINING TO A DEPOSITION.

¶34. Khin Wai, M.D., was Hall's treating psychiatrist. Her deposition consisted of two volumes. There was only one correction on the errata sheet for her deposition. Nowhere does East Mississippi state what the correction was or whether it was relevant to the outcome of the case. "To the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal." *Dillard's, Inc. v. Scott*, 908 So. 2d 93, 99 (Miss. 2005) (quoting *Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987), *superceded by statute*, Miss. Code Ann. § 99-7-2 (Rev. 2000)).

## VIII. WHETHER THE DAMAGES WERE EXCESSIVE.

16

¶35. Hall's past medical expenses totaled $348,402.94. East Mississippi offered no rebuttal to these costs.

¶36. Hall was hospitalized immediately after the accident, but she had several other hospitalizations to treat the recurring infection in her leg. The circuit judge found that the average cost of these hospitalizations was $15,000. He awarded $75,000 for future medical expenses. East Mississippi offered no rebuttal to this estimate.

¶37. The damages total was $1,000,000, meaning that the circuit judge gave Hall $591,597.06 for pain and suffering and for a permanent physical impairment to the leg and foot. The circuit judge stated:

> The injuries to the Plaintiff's right foot and heel cause drainage to ooze and her sock becomes attached to the wounds when she tries to remove it. As depicted by the photographs in evidence, it is clear that the Plaintiff's right foot and lower leg are swollen and that she has significant scar tissue as well. The foot appears to be deformed with a large calloused area around the heel. . . .
>
> * * *
>
> She is permanently physically impaired and she will continue to have pain and suffering for the balance of her life. She has a noticeable limp in her walk and gait.

¶38. Hall suffered horrible injuries to her leg, and she will be impaired for the rest of her life. The amount of $591,597.06 is not even one and one-half times the amount of the compensatory damages. The circuit court's award of $1,000,000 in damages was not excessive and is supported by substantial evidence.

17

## IX. WHETHER THE CIRCUIT COURT ERRED IN GRANTING HALL'S MOTION FOR POST-JUDGMENT INTEREST.

¶39.    Miss. Code Ann. § 75-17-7 (Rev. 2000) provides that judgments in cases such as this "*shall* bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." (Emphasis added.)   Here, the circuit court did not include post-judgment interest in its memorandum opinion and judgment.  Subsequently, Hall filed a motion for post-judgment interest, which was granted.

¶40.    Hall filed her motion under M.R.C.P. 60(a), alleging that the circuit court's failure to address her prayer for post-judgment interest was a clerical error.  East Mississippi contends, however, that her motion is, in actuality, a motion to alter or amend a judgment under M.R.C.P. 59(e), which is required to be filed within 10 days of the entry of judgment.  Hall did not file her motion until 58 days after the circuit court filed its judgment.  East Mississippi's argument does not take into account our ruling in ***U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis***, 825 So.2d 38, 50 (Miss. 2002):

> We also hold the chancellor was within the bounds of his discretionary authority in awarding post-judgment interest. Because the right to post-judgment interest is a statutory right according to Miss. Code Ann. § 75-17-7 (1991), this Court does not conclude that the motion for interest was a motion to amend or alter the judgment.  Therefore, we need not address the timeliness of filing the motion in accordance with M.R.C.P. 59. Miss. Code Ann. § 75-17-7 (1991) has been amended to allow interest "at a per annum rate set by the judge."  We hold that the chancellor's awarding of interest at the rate of one percent above the prime rate of eight percent was within his discretion under the revised statute.

Therefore, under *Francis*, the Rule 59(e) 10-day limitation is not applicable to a motion for post-judgment interest.

¶41.    Next, East Mississippi contends that the circuit court did not have jurisdiction to rule on the motion inasmuch as the motion was filed after East Mississippi had filed its notice of appeal.  Indeed, the "timely filing of a notice of appeal is jurisdictional." *Smith v. Parkerson Lumber, Inc.*, 890 So. 2d 832, 834 (Miss. 2003).  We find, however, that, even if the circuit court did not have jurisdiction to rule upon Hall's motion, the error would be harmless due to the mandatory nature of Miss. Code Ann. § 75-17-7 (Rev. 2000):  post-judgment interest "shall" be awarded.

¶42.    East Mississippi argues that post-judgment interest cannot be awarded where, as here, the award of compensatory damages is equal to the statutory cap of $250,000 under the Mississippi Tort Claims Act, Miss. Code Ann. §11-46-15 (Rev. 2002).  Section 11-46-15(2) specifically excludes awards of punitive damages, pre-judgment interest and attorney's fees from being imposed against a governmental entity.  Therefore, because the Legislature did not specifically exclude post-judgment interest, it may be awarded against governmental entities.  *See Miss. Transp. Comm'n v. Ronald Adams Contr., Inc.,* 753 So. 2d 1077, 1094 (Miss. 2000) (adopting plurality opinion in *City of Jackson v. Williamson*, 740 So. 2d 818, 821 (Miss. 1999)).  Public policy also demands that governmental entities covered by the MTCA pay post-judgment interest:

> Several important public policy considerations undergird both legislative intent and our interpretation of that intent today regarding post-judgment interest.  Post-judgment interest is generally recognized as a common-law element of actual

19

damages in civil actions. In fact, we have long held that interest is not imposed as a penalty but instead as compensation for detention of overdue money. This resolves any questions of hybrid situations where the governmental entity is represented by an insurance company to which the governmental entity has paid a premium for costs, interest, and statutory damages. Indeed, our citizenry must be given the benefit of that which they have already paid. Dealing with the current issue as we have rectifies the gamut of potential scenarios that may arise.

Further, simple interest is not a sufficient remedy. The utility of post-judgment interest, statutory damages, and costs is that of supplementing this simple damages interest with necessary additional damages. In addition, the application of post-judgment interest and statutory damages discourages frivolous appeals and encourages governmental actors to settle legitimate claims when made. The potential of paying post-judgment interest and statutory damages encourages speedy compensation of legitimate claims and discourages litigation of unworthy issues. The strategy of delaying payment until the award has actually diminished in value will be thwarted. The interests of worthy claimants and judicial economy will each be advanced by today's holdings.

*Williamson*, 740 So. 2d at 823 (citations omitted).

¶43. We find that, due to the mandatory nature of § 75-17-7 and because public policy heavily favors post-judgment interest, post-judgment interest over and above the statutory cap may be awarded against a governmental entity.

## CONCLUSION

¶44. For these reasons, we affirm the circuit court's judgment in favor of Julia Renee Hall.

¶45. **AFFIRMED.**

**SMITH, C.J., DIAZ, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., NOT PARTICIPATING.**

20