**In re GULFPORT PILOTS ASSOCIATION, INC., Debtor.**

No. 98–52543–EE.

United States Bankruptcy Court, S.D. Mississippi.

April 12, 2010.

Nicholas Van Wiser, Biloxi, MS, Attorney for Gulfport Pilots Association, Inc., Mississippi State Pilots at Gulfport, Inc., Murrell W. Hilton, Jr., Stanley Fournier, Jr., and Thomas Gibson.

Kimberly Lentz, Chapter 7 Trustee.

Jeffrey R. Barber, Jackson, MS, Attorney for Chapter 7 Trustee.

John G. McDonnell, Courtney McDonnell Snodgrass, Biloxi, MS, Attorneys for Michael Kopszywa.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE TRUSTEE'S OBJECTION TO CLAIM OF MICHAEL KOPSZYWA

EDWARD ELLINGTON, Bankruptcy Judge.

**THIS MATTER** came before the Court on the *Objection to Claim* filed by the Chapter 7 Trustee, H.S. Stanley, Jr. (Trustee),[1] the *Creditor's Response to Objection*

---

1. H.S. Stanley, Jr. has now retired. His resignation as trustee in this case and the appointment of Kimberly Lentz as interim trustee took place on March 24, 2010. For the sake of brevity, and because the distinction is not important to the issues before the Court, this opinion refers to both as "Trustee."

*to Claim* filed by Michael Kopszywa (Kopszywa), and the *Objection to Proof of Claim and Joinder in Trustee's Objection (Joinder)* filed by the Debtor, Gulfport Pilots Association, Inc., and by other interested parties, Mississippi State Pilots at Gulfport, Inc., Murrell W. Hilton, Jr., Stanley Fournier, Jr., and Thomas Gibson. An evidentiary hearing was held on September 10, 2009, on the above matters and upon receipt of the hearing transcript, the Court entered a *Scheduling Order for Post–Hearing Briefs*, which instructed the parties to submit briefs supporting their respective positions. After considering the evidence, pleadings, and the post-hearing briefs filed by the parties, the Court finds that the *Objection to Claim* and the *Joinder* are well taken in part and should be sustained in part, as follows: (1) post-judgment, pre-petition interest should not be allowed; and (2) maintenance payments should not be allowed to continue to accrue from the date of the filing of the bankruptcy petition. The Court further finds that Kopszywa's claim for post-petition interest is premature at this time.

## FINDINGS OF FACT

On June 15, 1998, Gulfport Pilots Association, Inc. (Gulfport Pilots) filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.[2] Kopszywa timely filed a proof of claim in the amount of "$215,000 +" against the bankruptcy estate and attached to the proof of claim a copy of a judgment rendered in a civil action between Kopszywa and Gulfport Pilots by the Circuit Court of Harrison County, Mississippi, on May 22, 1997. On Official Form 10, the form used for filing proofs of claims, Kopszywa checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim." Although the form instructed him to attach an itemized statement of these charges, Kopszywa did not attach any document to the proof of claim other than the state court judgment. Kopszywa's claim is the only one listed in the Court's claims register in the estate.

The Trustee contends that the resolution of this case hinges upon this Court's determination as to whether Kopszywa is entitled to recover from the bankruptcy estate any amount in addition to $215,000, the face amount of his claim. For reasons that will become clear later in this opinion, Mississippi State Pilots at Gulfport, Inc. (Mississippi State Pilots) and Murrell W. Hilton, Jr. (Hilton), Stanley Fournier, Jr. (Fournier), and Thomas Gibson (Gibson), the former owners, directors, officers, and employees of the now defunct Gulfport Pilots and the current owners, directors, officers, and employees of Mississippi State Pilots, have agreed to pay Kopszywa $215,000, but no more than that amount.[3] Kopszywa rejects their offer and insists that he is entitled to substantially more. This case arrived at this curious juncture because of the machinations of the individual directors after a state court judgment in the principal amount of $200,000, in addition to an amount for unpaid medical bills and weekly maintenance, was entered

---

**2.** Hereinafter, all references to statutory sections and to the Bankruptcy Code are to the United States Bankruptcy Code located at Title 11 of the United States Code, unless otherwise noted.

**3.** Mississippi State Pilots, Hilton, Fournier, and Gibson have filed a *Motion to Allow Tendering of Funds* in which they have requested leave of this Court to pay Kopszywa $215,000, plus the fees allowed by statute to the Trustee and his counsel. In return, they request that the Trustee close the bankruptcy case. That motion, opposed by Kopszywa, is still pending.

in favor of Kopszywa and against Gulfport Pilots.

■ As its name suggests, Gulfport Pilots was in the business of navigating vessels in and out of Gulfport Harbor in Gulfport, Mississippi.[4] Kopszywa suffered an injury in 1995 while working as a pilot boat operator for Gulfport Pilots. Kopszywa sued Gulfport Pilots under the Jones Act[5] in the Circuit Court of Harrison County, Mississippi. As the result of mediation, Gulfport Pilots agreed to pay Kopszywa $200,000, plus his unpaid medical bills. Later, when Gulfport Pilots attempted to rescind the settlement after its insurance carrier failed to honor the agreement, Kopszywa succeeded in obtaining a judgment enforcing the settlement. It is this state court judgment, entered on May 22, 1997, that Kopszywa attached to his proof of claim and that is the focus of the present dispute. The judgment awards Kopszywa the following relief:

> IT IS HEREBY ORDERED that judgment in plaintiff's favor be entered against Gulfport Pilots Association, Inc. for the sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS, plus judicial interest from April 25, 1997 until paid, with Gulfport Pilots Association, Inc. to remain responsible for the payment of plaintiff's medical bills outstanding as of the date of the settlement of this matter, that is, March 25, 1997.
>
> IT IS FURTHER ORDERED that defendant Gulfport Pilots Association, Inc. is assessed costs and attorney's fees of $ –0– as a consequence of plaintiff's filing of his Motion to Enforce Settlement.
>
> IT IS FURTHER ORDERED that defendant Gulfport Pilots Association, Inc. is to pay maintenance to plaintiff from April 25, 1997, at a rate of $105.00 per week, until this Judgment has been satisfied in full.

On May 22, 1997, the same day that Kopszywa obtained the judgment against Gulfport Pilots, Hilton, Fournier, and Gibson resigned their positions as directors and officers of Gulfport Pilots and formed a new corporation, Mississippi State Pilots, but remained employees of Gulfport Pilots. One week later, they resigned their employment as pilots from Gulfport Pilots and transferred ownership of the only viable pilot boat owned by Gulfport Pilots to Mississippi State Pilots for a sum below its market value. They also transferred all outstanding accounts receivable for piloting work they performed during the prior week when they were employees of both corporations.

■ On June 26, 1997, Kopszywa sued Mississippi State Pilots, as well as Hilton, Fournier, and Gibson, in the Chancery Court of Harrison County, Mississippi, under Mississippi's Fraudulent Conveyance Act.[6] On the first day of trial, on June 15, 1998, the individual directors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on behalf of Gulfport Pilots. The filing of the petition automatically

---

**4.** Mississippi law requires that a licensed pilot navigate all vessels of a certain size entering and leaving the State's harbors. Miss.Code Ann. § 59–1–41.

**5.** The Jones Act provides a seaman with a right to recover damages against his employer for negligence resulting in his injury or death. 46 U.S.C. app. § 688, *recodified at* 46 U.S.C. § 30104 (2006).

**6.** The Fraudulent Conveyance Act, in general, prohibits conveyances made with the intent or purpose to delay, hinder, or defraud creditors. Miss.Code Ann. § 15–3–3, *repealed and replaced* by Miss.Code Ann. §§ 15–3–101 *et seq.* (2006). The Chancery Court has jurisdiction to set aside fraudulent conveyances of property. Miss.Code Ann. § 11–5–75.

halted the trial long enough for the Trustee to determine that the cause of action constituted an asset of the bankruptcy estate.[7] After this Court lifted the automatic stay on November 21, 2001, the Trustee substituted himself in place of Kopszywa as the appropriate plaintiff in the Chancery Court action and proceeded to prosecute the fraudulent conveyance action for the benefit of the bankruptcy estate.

At trial, the individual directors admitted that they formed Mississippi State Pilots to avoid liability to Kopszywa. In a judgment rendered on May 20, 2003, the Chancery Court found in favor of the Trustee but awarded only $10,064.50 in damages, the amount the Chancery Court determined that the directors had fraudulently conveyed to Mississippi State Pilots.[8] Subsequently, on May 7, 2004, the Chancery Court entered a separate judgment denying the Trustee's request for attorney's fees. The Trustee appealed these decisions on the ground that the Chancery Court erred in failing to include all of the accounts receivable of Mississippi State Pilots in the amount of fraudulently conveyed assets and in failing to award punitive damages and attorney's fees.

On December 7, 2006, the Mississippi Supreme Court reversed the lower court, holding that the new corporation was liable for all of Gulfport Pilot's debts and that the individual directors were personally liable up to the value of the fraudulently transferred accounts receivable. *Stanley v. Miss. State Pilots of Gulfport, Inc.,* 951 So.2d 535 (Miss.2006). The Supreme Court remanded the case to the Chancery Court for a determination of the amount of personal liability of the individual directors as well as attorneys' fees and punitive damages. According to the post-hearing briefs submitted by the parties, the Chancery Court has not yet considered these matters.

The Trustee, Mississippi State Pilots, and the individual directors engaged in settlement discussions in the aftermath of the Supreme Court's decision. According to the parties, however, a hurdle to their efforts to reach an amicable settlement of the fraudulent conveyance action is Kopszywa's contention that his claim against the estate far exceeds $215,000. As noted previously, Mississippi State Pilots and the individual directors have agreed to pay Kopszywa the full amount of the face value of his claim, the only pre-petition claim filed against the estate, and to pay the Trustee's attorney's fees and certain statutory fees. Kopszywa opposes the Trustee's efforts to settle, characterizing the offer by the individual directors as "grossly inadequate" and a thinly veiled effort to avoid payment of punitive damages and attorney's fees. The Trustee supports the settlement offer because of his belief that any judgment rendered by the Chancery Court in excess of $215,000 would belong to Gulfport Pilots or to the individual directors as its former shareholders under § 726(a)(6), and not to Kopszywa.[9]

---

7. Section 544(b) gives the trustee the power to avoid the debtor's transfers or obligations that are avoidable by an actual unsecured creditor under authority outside the bankruptcy law. *Smith v. Am. Founders Fin. Corp.,* 365 B.R. 647, 658 (S.D.Tex.2007).

8. The Chancery Court found that the fraudulent conveyance consisted only of the boat and one week's worth of accounts receivable earned during the brief period of time the individual directors were employed by both corporations. This amount totaled $10,064.50.

9. Kopszywa recently filed a *Motion for Relief from the Automatic Stay to Join in Pending Litigation* in which he asserts that he is the proper plaintiff in the Chancery Court action. The Trustee opposes the *Motion for Relief* on the ground, *inter alia,* that it is premature until such time as this Court determines the

In his *Objection to Claim*, the Trustee contends that because Kopszywa filed his claim in the face amount of $215,000 based upon a pre-petition judgment, he is entitled only to that amount or, alternatively, to that amount plus an additional amount permitted by law up to the date Gulfport Pilots filed its petition for relief on June 15, 1998. The Trustee protests any attempt by Kopszywa to use the judgment resulting from his personal injury action to bootstrap any future award of punitive damages and attorney's fees that may result from the Supreme Court's reversal of the Chancery Court judgment rendered in the fraudulent conveyance action. In his brief, the Trustee faults Kopszywa for failing to distinguish between the Circuit Court judgment (based on his personal injury action) and the Chancery Court action (based on the Trustee's fraudulent conveyance action).

As to the issue of post -judgment, pre-petition interest,[10] the Trustee asserts that no interest accrued on the $215,000 judgment because the Circuit Court Judge did not include an interest rate in the judgment, as contemplated by Miss.Code Ann. § 75–17–7. According to the Trustee, this Court lacks authority to amend the Circuit Court judgment to include an interest rate.

As to the issue of post-petition interest,[11] the Trustee points out that Kopszywa's claim is unsecured and, therefore, § 502(b) prohibits payment of post-petition interest. Also, because the estate in this case is insolvent, Kopszywa's claim for post-petition interest is not permitted under § 726(a). Finally, the Trustee asserts that

§ 506(a)(2) allows an oversecured creditor to recover interest, fees, costs, or charges only as provided for under an agreement or under a state statute. Kopszywa, however, is not an oversecured creditor, and his claim is not based on an agreement or state statute. Gulfport Pilots, Mississippi State Pilots, Hilton, Fournier, and Gibson all joined in the Trustee's *Objection to Claim* and together they ask this Court to fix the amount of Kopszywa's claim at the amount shown on its face, namely $215,000.

Kopszywa insists in his *Response to the Objection to Claim* that his proof of claim includes both interest and maintenance but admits that it does not include attorney's fees or expenses. In his brief, he contends that maintenance awarded in the judgment in the amount of $105 per week continued to accrue post-petition because of the finding of fraud by the Supreme Court. He also points out that the Supreme Court indicated in its decision that Gulfport Pilots, Mississippi State Pilots, and their individual directors may be liable for attorney's fees and punitive damages. Apparently, Kopszywa believes he should be the beneficiary of any such award, rather than the bankruptcy estate, but he does not cite any legal authority in support of his contention.

As to the issue of post-judgment, pre-petition interest, Kopszywa suggested at the hearing on this matter that this Court should impose an eight per cent interest rate or perhaps a federal post-judgment interest rate of 6.01%, the percentage in effect when the state court judgment was

amount of Kopszywa's claim. The *Motion for Relief* is still pending.

**10.** Here, the term "post-judgment, pre-petition" refers to the period of time beginning on April 25, 1997, the date set forth in the Circuit Court judgment as the date interest would begin to run, and ending on June 15, 1998,

the date of the filing of the bankruptcy petition.

**11.** The term "post-petition" refers to the period of time after the time of the filing of the bankruptcy petition on June 15, 1998.

rendered. In his brief, he urges this Court to impose a legal rate of six per cent and cites as authority § 39 of the Mississippi Code of 1942 and a federal district court case [12] decided in 1975 that applied the statute superseded by the amendment of Miss.Code Ann. § 75–17–7.

As to the issue of post-petition interest, Kopszywa acknowledges that § 502(b) prohibits payment of post-petition interest to unsecured creditors on their allowed claims. However, Kopszywa insists that an exception under § 726(a)(5) [13] applies because Gulfport Pilots would have been solvent at the time of the filing of the petition on June 15, 1998, except for the fraudulent transfer of assets by the individual directors to Mississippi State Pilots. Kopszywa attached to his brief copies of the income tax returns of Gulfport Pilots for the years 1995 and 1996, showing gross profits in the amounts, respectively, of $579,635 and $604,988. He also attached a copy of the transcribed testimony of an accountant from the trial of the fraudulent conveyance action that the income tax returns of Mississippi State Pilots for the years 1998 and 1999 reflected gross profits in the amounts, respectively, of $542,805 and $972,850. Kopszywa cites *In re Best*, 365 B.R. 725 (Bankr.W.D.Ky.2007), *In re Kentucky Lumber Co.*, 860 F.2d 674, 677 (6th Cir.1988), and *United States v. Alaska National Bank (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1329 (9th Cir.1982) in support of his contention, although none of these cases involved the fraudulent transfer of assets.

Kopszywa calculates his claim to include $215,000, plus maintenance awarded in the amount of $105 per week totaling $65,520 through March 2009, plus post-judgment, pre-petition interest as well as post-petition interest.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B).

### II.

■ Sections 501 and 502 govern the filing and allowance of creditor claims. Pursuant to § 502(a), a proof of claim filed by a creditor under § 501 is deemed allowed unless a party in interest (often the trustee) objects to the claim. Section 502(b) provides that once an objection is made, the Court, after notice and a hearing "shall allow such claim in such amount" as of the date of the filing of the petition except to the extent the claim falls within one of the nine exceptions listed in § 502(b)(1)-(9). The present dispute concerns § 502(b)(1), which disallows a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

**12.** *Ayers v. W. Line Consol. School Dist.*, 404 F.Supp. 1225, 1227 (N.D.Miss.1975), *rev'd*, 555 F.2d 1309 (5th Cir.1977), *vacated in part sub nom. Givhan v. W. Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

**13.** Section 726(a) governs the distribution of assets upon liquidation. Fifth in the order of distribution is payment of interest at the legal rate from the date of the filing of the petition on an unsecured creditor's allowed claim. 6 *Collier on Bankruptcy* ¶ 726.02[5] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Any money that remains leftover belongs to the debtor under § 726(a)(6).

■ The Federal Rules of Bankruptcy Procedure [14] govern the procedure for the filing and allowance of claims. Rule 3001(a) sets forth the form and content requirements for proofs of claim: They must be in writing and must conform substantially with "the appropriate Official Form." Official Form 10, in turn, requires a claimant to specify whether the proof of claim includes "any interest or other charges in addition to the principal amount of the claim" and if so, to attach an "itemized statement of all interest or additional charges." Rule 3001(f) deems an unsecured proof of claim, if filed in accordance with Rule 3001 and Official Form 10, *prima facie* evidence of the validity and amount of that claim. Unless a party in interest objects to the claim, the claim is deemed allowed, and the trustee may distribute assets of the estate based on that claim without the need for an evidentiary hearing. *Calif. State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co.)*, 837 F.2d 696, 698 (5th Cir.1988).

■ This Court in *Pursue Energy* described the burden-shifting process that § 502 and Rule 3001 mandate during a proof of claim dispute when a creditor files an objection to a proof of claim that comports with the requirements of Rule 3001. *In re Pursue Energy Corp.*, 379 B.R. 100, 105–06 (Bankr.S.D.Miss.2006), *aff'd*, No. 3:06CV405, 2007 WL 2900483 (S.D.Miss. Sept. 28, 2007). Under the procedural framework provided by the Bankruptcy Rules, which must be construed under Rule 1001 "to secure the just, speedy and inexpensive determination" of disputed claims, the claimant will prevail unless the party who objects to the proof of claim produces evidence that is at least equal in probative force to that offered by the proof of claim. If the party who objects produces this rebuttal evidence, then the burden of going forward with the evidence shifts back to the claimant who bears the ultimate burden of persuasion to establish the validity and amount of his claim by a preponderance of the evidence. *Fidelity Holding Co.*, 837 F.2d at 698. As this Court noted in *Pursue Energy*, the effect of Rule 3001(f) is to analogize the filing of a proof of claim to the filing of a verified complaint in a civil action and, similarly, the filing of an objection to the filing of an answer. *Pursue Energy*, 379 B.R. at 105 (quoting *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir.1985)).

## III.

■ At issue in this contested matter is the proper amount of Kopszywa's claim. Kopszywa filed his proof of claim in accordance with § 501(a) and Rule 3001 in the face amount of "$215,000 +" based upon an attached state court judgment. Thus, Kopszywa's claim in the amount of $215,000 is entitled to *prima facie* validity. The Trustee offered no evidence to rebut this component of Kopszywa's claim and, indeed, the Trustee in his brief "confesses" the claim as filed. What the Trustee does dispute are the pre-petition and post-petition amounts of post-judgment interest on the principal amount of $215,000 as well as the post-petition amounts of post-judgment maintenance.

Kopszywa insists in his *Response to Objection to Claim* that he is entitled to maintenance in the amount of $105 per week from April 25, 1997, until satisfaction of the judgment, which he calculates from April 25, 1997, through March, 2009, to total $65,520. He further contends that he

---

14. Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifi-

cally noted otherwise.

is entitled to pre-petition and post-petition interest, although he does not specify the amounts in any of his pleadings. Also, as noted previously, Kopszywa did not attach to his proof of claim an itemized statement of these amounts, separate and apart from the state court judgment. He posits that the state court judgment itself suffices as an itemization.

 Kopszywa's position carries weight with regard to the issue of maintenance, given that the amount is easily calculable from the face of the judgment. The judgment is silent, however, as to an interest rate and thus is an improper substitute for what Rule 3001 requires. For that reason, the interest amounts that he demands do not enjoy any evidentiary benefit. Consequently, Kopszywa retains the burden of proving by a preponderance of the evidence this component of his claim. Requiring Kopszywa to meet the initial burden of proving his claim for interest is only fair. As the Trustee pointed out in his brief, Kopszywa's failure to comply with Rule 3001 placed the Trustee in the awkward position of filing an objection [15] based on the verbal statements of counsel for Kopszywa that his client's claim exceeded $450,000, far more than the face amount of the proof of claim. Nonetheless, Kopszywa's failure does not render his claim invalid but does deprive it of *prima facie* validity.

With these burdens of proof in mind, the Court will address separately the three components of Kopszywa's claim that are in dispute: (1) post-judgment, pre-petition interest; (2) post-petition interest under § 726(a)(5); and (3) post-petition maintenance.

### A. Post-judgment, Pre-petition Interest

 At common law, there was no interest on judgments. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 840, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Post-judgment interest is solely a creature of statute and is available, if at all, only as provided by law. In Mississippi, the statute that provides for post-judgment interest states:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judgment to be fair but in no event prior to the filing of the complaint.

Miss.Code Ann. § 75–17–7. Therefore, Mississippi law leaves to the discretion of the trial judge the rate of interest to be applied to judgments, as well as the date such interest begins to accrue (so long as the date is no earlier than the date of the filing of the complaint). To clarify the intent of the Mississippi Legislature in adopting this approach to post-judgment interest, the Court has found instructive a brief historical analysis of Miss.Code Ann. § 75–17–7.

Since 1848, the Mississippi Legislature has authorized its state courts to award post-judgment interest:

> *Power of the Court to Decree Interest.* The Superior Court of Chancery or Su-

---

**15.** Kopszywa also complains in his *Response to Objection to Claim* that the Trustee filed his objection to the allowance of his claim too late. Admittedly, eleven years after the filing of a proof of claim is a long time, however, there is no time deadline for filing objections to claims in § 502 or in Rule 3007. Moreover, the Trustee was unaware that the amount of Kopszywa's claim substantially exceeded the face amount of the proof of claim until recently.

preme Court having jurisdiction, shall have power and authority in any cases where, by any final decree, any sum or sums of money are directed to be paid to either party, to award interest until the same shall be paid; any law or custom to the contrary notwithstanding.

1848 Hutchinson's Miss.Code, ch. 54, art. 2, § 38. Then, in 1857, the Legislature mandated that judgments rendered in state courts bear the legal rate of interest of six per cent:

> Art. 1. The legal rate of interest, on all bonds, notes, accounts, judgments, and contracts, shall be six per cent. per annum, but contracts may be made in writing, for the payment of a rate of interest as great as ten per cent. per annum.
>
> And if a greater rate of interest than ten per cent. shall be stipulated for in any case, such excess shall be forfeited, on the plea of the party to be charged therewith; and all judgments and decrees founded on any contract, shall bear interest after the rate of the debt on which such judgment or decree was rendered.
>
> . . .
>
> Art. 3. All judgments not specified in this act, shall bear interest at the rate of six per cent. per annum.

1857 Miss.Code, ch. 50, arts. 1, 3.

Thereafter, for well over one hundred years, the post-judgment interest rate of six per cent remained unchanged despite several codifications that rearranged and displaced prior versions of the statute, with the Legislature enacting only minor changes to its provisions in the years between 1857 and 1975. In 1871, for example, the Legislature changed the word "act" to "chapter." 1871 Miss.Code, ch.

51, § 2281. In 1880, the Legislature deleted the reference to the interest rate on bonds and simplified the language regarding recovery of a greater rate of interest than ten per cent from "such excess shall be forfeited, on the plea of the party to be charged therewith" to "all interest shall be forfeited." 1880 Miss.Code § 1141. In 1892, the Legislature changed the language of the progenitor statutes (§ 1141, § 2281), although it made no change to the specific percentage rate of six per cent or to its mandatory terms:

> **Interest on judgments and decrees.**—All judgments and decrees founded on any contract, shall bear interest after the rate of the debt on which the judgment or decree was rendered. All other judgments and decrees shall bear interest at the rate of six per centum per annum.

1892 Miss. General Statute Laws § 2350. Throughout the Legislature's successive codifications of Mississippi law, the language of the post-judgment interest rate statute remained the same or similar from 1857 to 1975.[16]

Then, in 1975, the Legislature increased the interest rate on judgments from six per cent to eight per cent. That legislation, amending Miss.Code Ann. § 75–17–7, is the direct ancestor of the current version of the statute at issue here:

> All judgments and decrees founded on any contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments and decrees shall bear interest at the rate of eight percentum (8%) per annum.

1975 Miss. Laws, ch. 336, § 1. The interest rate on judgments remained at eight per

---

**16.** *See* 1906 Miss.Code, ch. 70, § 2680; 1917 Miss.Code Ann. § 2078; 1930 Miss.Code, ch. 37, § 1949; Miss.Code of 1942, § 39; Miss. Code of 1972, § 75–17–7.

cent until 1989, when the Legislature amended § 75–17–7 to its current version.

As amended, Miss.Code Ann. § 75–17–7 deletes the reference to a specific percentage rate and instead requires the judge hearing the complaint to set the interest rate and the method of its calculation:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judgment to be fair but in no event prior to the filing of the complaint.

1989 Miss. Laws, ch. 311, § 5 (codified at Miss.Code Ann. § 75–17–7); *see Estate of Baxter v. Shaw Assocs., Inc.*, 797 So.2d 396, 407 (Miss.Ct.App.2001). With these changes, the Legislature returned Miss. Code Ann. § 75–17–7 to its pre–1857 language when, as previously noted, the Legislature granted courts the discretion to award post-judgment interest and to determine the percentage rate of interest.

The above historical analysis demonstrates that the Legislature in 1989 intended to change the method for establishing the post-judgment interest rate. The purpose for this change is unknown in the absence of any written legislative history but the advantage in granting a judge the power to set the rate of interest is clear: it relieves the legislature of the burden of amending the statute each time there is a fluctuation in the market interest rates.[17] In this way, changes to the interest rate do not require repeated legislative action.

The judgment at issue here awarded Kopszywa "judicial interest from April 25, 1997 until paid" without specifying a percentage rate. This Court cannot amend the judgment by supplying its own rate of interest, as Kopszywa urges this Court to do by proposing different rates, ranging from six per cent to eight per cent. They may all be reasonable rates but the salient fact is that the applicable statute does not authorize this Court— only the court that rendered the judgment—to make that determination, which in this case was the Circuit Court of Harrison County. This Court does not reach this conclusion without pause. As pointed out by Kopszywa, Miss.Code Ann. § 75–17–7 uses the term "shall," which the Mississippi Supreme Court has interpreted as meaning that an award of post-judgment interest is "mandatory." *See Miss. Dep't of Human Servs. v. McNeel*, 10 So.3d 444 (Miss.2009); *Miss. Dep't of Mental Health v. Hall*, 936 So.2d 917 (Miss.2006). Indeed, the Supreme Court has gone so far as to describe post-judgment interest as a statutory right. *McNeel*, 10 So.3d at 460; *Hall*, 936 So.2d at 929–30. On the other hand, Kopszywa has not presented this Court with any case authority that supports his view that this Court may alter the state court judgment to include a percentage rate. Notably, the Supreme Court itself did not feel compelled by the statute to calculate the amount of interest due when confronted with the issue in *McNeel* and *Hall* but remanded both cases to the lower tribunal with directions to do so in conformance with the statute. *McNeel*, 10 So.3d at 460; *Hall*, 936 So.2d at 929–30. Here, of course, this Court is not similarly empowered.

---

**17.** To address fluctuating market conditions, the approach of some states is not to provide for a specific post-judgment interest rate but to tie the interest rate to an index or standardized market rate. *See, e.g.,* Tex. Fin.Code Ann. § 304.003 (2010) (post-judgment interest rate is the prime rate as published by the Federal Reserve System but in no event is less than five per cent or more than fifteen per cent).

█ This Court recognizes that the purpose of post-judgment interest is to compensate the "wronged" plaintiff for the loss of the use of the money awarded by a final judgment. *See Affiliated Capital Corp. v. City of Houston,* 793 F.2d 706, 710 (5th Cir.1986). Indeed, an interest award is often a substantial percentage of a plaintiff's ultimate compensation. Here, for example, Kopszywa's claim would more than double under the weight of post-judgment interest.

█ It is a basic principle of statutory construction, however, that a court must give effect to the plain language of a statute. *McLaurin v. Noble Drilling (U.S.) Inc.,* 529 F.3d 285, 288 (5th Cir. 2008). The method chosen by the Legislature for calculating post-judgment interest rates in Mississippi clearly grants the power to the trial judge, who in this case did not set a percentage in the judgment and who apparently was not asked or reminded by Kopszywa to do so.[18] Under § 502(b)(1) a claim is not allowable to the extent it is unenforceable against the debtor and property of the debtor. Accordingly, the Court finds that Kopszywa has not met his burden of proof and his claim for post-judgment interest should be disallowed.

### B. Post-petition Interest Under § 726(a)(5)

█ As stated previously, the issue before this Court is the amount of Kopszywa's claim. Whether his unsecured claim should include post-petition interest under the distribution scheme set forth in § 726(a)(5) depends on the existence of surplus funds in the estate after payment in full of the principal amount of all allowed claims. Because the distribution process governed by § 726 is the last step in the liquidation of a Chapter 7 case and does not begin until all property has been converted to cash, Kopszywa's claim for post-petition interest is premature. Here, there has been no actual recovery by the Trustee of any of the amounts awarded to the estate in the fraudulent conveyance action, or of any future amounts for punitive damages and attorney's fees. Indeed, the Trustee in his brief expresses skepticism that the Chancery Court will award the estate any punitive damages whatsoever. That the income tax returns of Gulfport Pilots and Mississippi State Pilots reflect substantial gross profits in the years before and after the filing by Gulfport Pilots of its bankruptcy petition does not automatically translate into a finding of surplus funds for purposes of § 726(a), as urged by Kopszywa.

█ In the event, however, that the estate should become flush with surplus funds at some point in the future as a result of the fraudulent conveyance action, this Court notes that § 726(a)(5) would entitle Kopszywa to compensation for the delay in payment of his claim caused by the filing of the bankruptcy case. Moreover, because his claim for payment of post-petition interest would be separate and distinct from his claim based on the state court judgment, the federal judgment rate under 28 U.S.C. § 1961 would apply. *See In re El Paso Refinery, L.P.,* 244 B.R. 613, 619–621 (Bankr.W.D.Tex.2000). Specifically, Kopszywa would be entitled to post-petition interest on his claim at the federal judgment rate of 5.43%, which was

---

**18.** Kopszywa did not file a motion to alter, amend, or correct the judgment under Rule 59 or Rule 60 of the Mississippi Rules of Civil Procedure to allow the trial judge an opportunity to insert a percentage rate in the judgment. *See, e.g., Hall,* 936 So.2d at 929–30 (affirming on appeal the trial judge's grant of motion for post-judgment interest filed under Rule 60(a) of the Mississippi Rules of Civil Procedure).

the rate in effect on June 15, 1998, the date of the filing of the petition.

### C. Medical Bills and Maintenance

■ The judgment provided for the payment of medical bills outstanding as of March 25, 1997. The evidence presented at the hearing showed that the amount of medical bills in the judgment was $15,000, and the parties do not dispute this amount. The face amount on the proof of claim was "$215,000 +," an amount that is consistent with $15,000 in medical bills. The Court finds that Kopszywa has met his burden of proof and, accordingly, his claim in the amount of $15,000 in medical bills should be allowed.

■ Additionally, the judgment provided for maintenance from April 25, 1997, at a rate of $105 per week, until the judgment is satisfied. Kopszywa cites no legal authority in his brief why this pre-petition debt should not be discharged under § 727(b). Accordingly, the Court finds that Kopszywa's claim for maintenance should be allowed from April 25, 1997, until the date of the filing of the bankruptcy petition, on June 15, 1998, which is a total of 59 weeks and 3 days. At $105 per week, or $15 per day, the amount of the allowed claim for maintenance computes to $6,240.

### CONCLUSION

The Court finds that the *Objection to Claim* filed by the Trustee and the *Objection to Proof of Claim and Joinder in Trustee's Objection* filed by Gulfport Pilots, Mississippi State Pilots, Hilton, Fournier, and Gibson should be sustained to the extent that they challenge Kopszywa's claim for post-judgment, pre-petition interest, which is hereby disallowed. Kopszywa's claims for medical bills and maintenance are allowed in the amounts set forth above, and to the extent that the *Objection*

*to Claim* and *Joinder* challenge those amounts, they should be overruled.

In conclusion, the Court finds that the total amount of Kopszywa's allowed claim should be $221,240, calculated as follows:

(1) Judgment Award in the principal amount of $200,000;

(2) Medical bills in the amount of $15,000; and

(3) Maintenance in the amount of $6,240.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9021.

**SO ORDERED.**