# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00837-SCT

*IN RE THE ESTATE OF HERBERT BERNARD
IVISON, JR.: MALOUF & MALOUF, PLLC*

*v.*

*THE ESTATE OF HERBERT BERNARD IVISON,
JR.*


DATE OF JUDGMENT:              07/28/2022
TRIAL JUDGE:                    HON. JANACE H. GOREE
TRIAL COURT ATTORNEYS:    MICHAEL J. MALOUF
                                    ROBERT EUGENE JONES II
                                    THOMAS D. LEE
                                    MICHAEL CASEY WILLIAMS
                                    SHELDON G. ALSTON
                                    P. SHAWN HARRIS
                                    J. WYATT HAZARD
                                    RONALD C. MORTON
                                    TODD WARREN SOREY
                                    NASH ELLIS GILMORE
                                    JAMES W. SHELSON
                                    EDWARD BLACKMON
                                    JOSIAH CHARLES BURNS
                                    EVAN THOMPSON
                                    TERRY R. LEVY
                                    WILLIAM DEMENT DRINKWATER
COURT FROM WHICH APPEALED:  SCOTT COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:    MICHAEL J. MALOUF
                                    JARED WILLIAM PHILLIPS
                                    ROBERT EUGENE JONES II
ATTORNEYS FOR APPELLEE:     RONALD C. MORTON
                                    JOSIAH CHARLES BURNS
NATURE OF THE CASE:         CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                   REVERSED AND REMANDED - 09/21/2023
MOTION FOR REHEARING FILED:

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Herbert Bernard Ivison, Jr., died with a large number of assets but also a large amount of debt.  His Estate included several income-generating businesses but little-to-no liquid assets.  The initial executor feared the Estate may be insolvent.  Because the assets would have to be sold, Herbert's widow, Rebecca Ivison, and his three sons from a previous marriage, though bitterly at odds, actually agreed on one thing—either Rebecca or the sons would buy all of the Estate's assets.  Both submitted purchase offers to the chancery court.  And the chancellor accepted Rebecca's offer.  The chancellor chose Rebecca's purchase offer because she intended to pay off *all* the timely probated claims in exchange for the assets free and clear.

¶2.     One of the timely probated claims listed in Rebecca's offer belonged to Malouf & Malouf, PLLC (Malouf).  When Herbert died, he and Rebecca were entangled in divorce proceedings.  Malouf was representing Herbert and had provided more than $86,000 in unpaid services.  But Herbert's Estate did not pay Malouf following the chancellor's order accepting Rebecca's offer "to pay the debts of the estate as submitted by [Rebecca]" in exchange for the assets.  Instead, the estate matter dragged on.  The chancellor retired.  A special judge was appointed.  And a substitute executor was agreed to.

¶3.     The substitute executor at some point moved to declare certain unsecured claims against the Estate extinguished and time-barred. Malouf's claim was included in this request. According to the substitute executor, by statute, Malouf had four years and ninety days from

2

issuance of letters testamentary to file an action against the Estate for payment of its claim.[1]

Malouf countered that such an action was unnecessary because, during those four years, the original chancellor had entered the order directing the sale of assets. And in this order, the court accepted Rebecca's offer "pursuant to its terms and conditions"—one such condition being that Malouf's probated claim would be paid. The special judge sided with the substitute executor and denied Malouf's probated claim as untimely.

¶4. Malouf has appealed. After review, we find the chancellor erred by ruling Malouf's timely probated claim was barred by statute. Suggesting Malouf had to take further action against the Estate to protect its claim after the court had already ordered all timely probated claims be paid by the asset-sale proceeds defies logic. While the substitute executor now argues the parties never intended all probated claims be paid, that argument conflicts with the plain language of Rebecca's offer, which was incorporated into the chancellor's original order. Rebecca offered to buy the assets of the Estate for $8 million *so that* the Estate could pay the $8 million in probated claims. And this amount *expressly* included Malouf's claim. So Malouf had no reason to pursue additional legal action to secure payment of this claim.

¶5. Therefore, we reverse the order denying Malouf's claim. And we remand the case to the chancery court with instructions that Malouf's probated claim be paid from proceeds of the purchase of the Estate's assets.

## Background Facts & Procedural History

### I. The Estate was insolvent.

---

[1] The Estate relied on Mississippi Code Section 15-1-25 (Rev. 2019), the statute of limitations for actions against an executor or administrator of an estate.

¶6. Herbert died November 21, 2014. His will was probated within two weeks, on December 3, 2014. This simple will sought to divide his millions in assets equally among his wife Rebecca and his four sons—three sons from a previous marriage, William, Andrew, and Brock (the Ivisons), and a fourth son, Trey, he shared with Rebecca. Herbert's assets included several income-generating, low-income-property management businesses and multiple real properties.

¶7. But Herbert's wishes were not to be.

¶8. First, there was *severe* enmity between Rebecca and the Ivisons, making the sharing of Herbert's businesses implausible. Second, the almost $8 million in probated claims threatened the solvency of Herbert's Estate. The Estate had little-to-no liquid assets. So the assets would have to be sold. And if they had to be sold, one thing Rebecca and the Ivisons did agree on was that the assets should be sold either to her or the Ivisons "to pay off these enormous probated claims."[2]

## II.    Rebecca offered to buy the assets of the Estate.

¶9. On December 27, 2016, Rebecca submitted her offer to Chancellor H. David Clark. As the written offer expressly stated, "[t]he intent of [Rebecca's] Offer [was] to pay off the claims that were timely probated against the Estate in exchange for the assets of the Estate" free and clear of all liens and encumbrances. One of those timely probated claims belonged

---

[2] Herbert and Rebecca's son Trey was in college at this time and thus was unable to compete with his mother's and half-brothers' vying quests to buy the Estate's assets.

to Malouf, which submitted an $86,480.01 claim for unpaid legal services.[3] During Herbert's life, Malouf had represented Herbert in the divorce proceedings with Rebecca—proceedings that never culminated in divorce, leaving Rebecca as Herbert's widow and not his ex-wife. Malouf's claim was listed in the attachment to Rebecca's offer and included in the $8,895,040.20 tally of probated claims, which Rebecca had offered to pay off.

¶10. In fact, Rebecca offered to pay the exact amount owed on the probated claims. She requested the Estate disclose the payoff amount of each probated claims so "the *exact* Purchase Price [could] be calculated." (Emphasis added.) Her offer assured that "All Probated Claims Will be Paid." And in exchange, the Estate would transfer all assets free and clear of any liens and encumbrances and without Rebecca's assuming any liabilities.

¶11. Rebecca's offer concluded with the assertion that her offer was superior to the Ivisons' because hers "achieves finality because it pays off Probated Claims, moots all pending motions, and allows the Estate to be closed." By contrast, her stepsons' offer would require further litigation of several probated claims.

### III.  The chancellor accepted Rebecca's offer.

¶12. Chancellor Clark accepted Rebecca's offer, rather than the Ivisons'. On June 20, 2017, he issued an Order Directing Sale of Estate Assets. In this order, Chancellor Clark

---

[3] For a claim against an estate of a deceased person to be timely probated, it must "whether due or not, . . . be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred . . . ." Miss. Code. Ann. § 91-7-151 (Rev. 2021). No one disputes that Malouf satisfied Section 91-7-151's timing requirements. So Malouf's claim was undeniably among the timely probated claims Rebecca's offer intended to pay off.

listed his reasons for his decision. These reasons included that (1) "[Rebecca]'s offer includes the payment of all probated claims other than her own," (2) "[Rebecca]'s offer includes the payment by her of all of the debts of the estate," (3) "the offer of [Rebecca] to purchase all of the assets of the estate in exchange for payment of all debts of the estate will [e]nsure that the estate is solvent," and (4) "[a]cceptance of the Ivisons' offer will guarantee future litigation, where acceptance of [Rebecca's] offer could avoid it."

¶13. Specifically, the court accepted Rebecca's offer "pursuant to the terms and conditions set forth therein." And the court ordered the executor to "[p]roceed with all due haste and dispatch to consummate the sale and transfer of all assets of the estate to Rebecca . . . and to thereafter proceed with all due haste and dispatch to extinguish all debts of the estate."

¶14. The sale, however, was not consummated in due haste and dispatch. Chancellor Clark's term eventually ended. And the newly elected Scott County chancellor recused. So on January 22, 2019, the Chief Justice of this Court appointed Senior Judge Janace H. Goree to serve as special judge.

¶15. A new executor was also appointed. On September 5, 2019, the parties agreed to substitute the original executor, Gary Thrash, with a new executor, Ronald C. Morton. Morton's firm represented Estate creditor Randy Perry Paint Contractors (RPPC), a potential conflict Morton disclosed and the parties waived.

### IV. The new executor moved to deny Malouf's claim.

¶16. On January 22, 2020, Executor Morton moved to declare certain unsecured claims extinguished and time-barred by the four-year statute of limitations for actions against an

6

estate executor.[4] One of the claims Executor Morton sought to extinguish was Malouf's original $86,480.01 claim. But Executor Morton did not seek to extinguish his former client RPPC's claims. Morton contended RPPC had "filed a timely motion to enforce its claims."

¶17. On February 19, 2020, Malouf responded to Morton's motion. Malouf argued the June 20, 2017 Order Directing Sale of Estate Assets amounted to a judgment in its favor "for its probated claim against [Rebecca]." Further, Malouf insisted "it would have been nonsensical and against judicial economy" to take collection efforts after the June 20, 2017 order. In the alternative, Malouf argued the statute of limitations should be tolled based on estoppel because Executor Thrash had assured Malouf "it did not need to do anything further to protect its claim" after probating its claim.

## V. The Court denied Malouf's claim as untimely pursued.

¶18. The special judge agreed with Executor Morton. On April 29, 2020, she entered an Order Concerning Executor's Motion to Declare Certain Unsecured Claims of the Estate Extinguished and Time Barred. In this order, the special judge ruled that the unsecured Estate creditors had to act against the executor to toll the statute of limitations and that Malouf had not done so. Thus, the chancellor ruled Malouf's claims "are hereby extinguished and forever barred."

¶19. Within ten days of that order, on May 8, 2020, Malouf moved to reconsider the April 29 Order. A year later, the court denied Malouf's motion on May 24, 2021.

---

[4] Under Mississippi Code Section 15-1-25, "An action or scire facias may not be brought against any executor or administrator upon any judgment or other cause of action against his testator or intestate, except within four years after the qualification of such executor or administrator."

**VI.     The court went back and forth on the finality of its judgment.**

¶20.    On June 9, 2021, Malouf submitted to the court *ex parte* a proposed judgment incorporating Mississippi Rule of Civil Procedure 54(b)'s language "to ensure that [the] May 24th ruling was a final, appealable judgment." The court entered the requested Rule 54(b) judgment on August 5, 2021.

¶21.    But the next day, on August 6, 2021, Executor Morton responded. He filed a Motion for Reconsideration and Request for Withdrawal of Entry of Duplicate Judgment. And on August 11, 2021, the special judge withdrew the Rule 54(b) judgment through a *nunc pro tunc* order. On August 18, 2021, Malouf followed up with a motion to reconsider the *nunc pro tunc* order.

¶22.    Four-and-a-half months later, on January 3, 2022—after much confusion—the special judge issued an order that both Malouf's proposed Rule 54(b) judgment and the *nunc pro tunc* order be withdrawn and vacated. Four months after that, the undeterred Malouf filed a motion for entry of a Rule 54(b) judgment. After some brief back-and-forth, the court ordered the entry of a Rule 54(b) judgment on July 28, 2022. In the order, the court "expressly determine[d] that there is no just reason for delay and expressly direct[ed] that a final, appealable Rule 54(b) judgment shall be and is hereby entered."

**VII.     Malouf appealed, and the Estate countered with a motion to dismiss.**

¶23.    Malouf appealed from the July 28, 2022 Rule 54(b) judgment on August 22, 2022. The Estate responded by filing a motion to dismiss for lack of appellate jurisdiction. In this

motion, the Estate claimed Malouf's appeal was untimely. This motion was passed for consideration with the merits of Malouf's appeal.

**Discussion**

## I. The Estate's Motion to Dismiss

¶24. We begin with the Estate's motion to dismiss for lack of appellate jurisdiction. "Timely filing of a notice of appeal is jurisdictional." ***Busby v. Anderson***, 978 So. 2d 637, 638-39 (Miss. 2008) (citing ***Miss. Dep't of Mental Health v. Hall***, 936 So. 2d 917, 929 (Miss. 2006)). "Mississippi Rule of Appellate Procedure 4(a) requires the notice of appeal to be filed with the clerk of the trial court within thirty days after the date of entry of the judgment or order being appealed." ***Id.*** at 639. "The rule is that '[g]enerally, only final judgments are appealable.'" ***Rogers v. Est. of Pavlou (In re Est. of Pavlou)***, 308 So. 3d 1284, 1287 (Miss. 2021) (alteration in original) (quoting ***M.W.F. v. D.D.F.***, 926 So. 2d 897, 899 (Miss. 2006)). So the controlling question in the Estate's motion is when did the claims-based decision Malouf is appealing become final and appealable.

¶25. Malouf contends that, because of the ongoing, open-ended nature of this estate matter, the order denying its probated claim was not a final judgment. Thus, a Rule 54(b) final judgment was required. *See **Pavlou***, 308 So. 3d at 1287 ("Rule 54(b) of the Mississippi Rules of Civil Procedure provides a mechanism for the certification of a nonfinal judgment as final and appealable.").

¶26. The Estate, however, insists the April 29, 2020 order declaring Malouf's claim time-barred was a final, appealable judgment. According to the Estate, the order extinguishing

9

Malouf's probated claim was not an interlocutory decision but a final and appealable judgment, which Malouf did not appeal within thirty days. The Estate concedes Malouf's May 8, 2020 motion to reconsider would have tolled the time to appeal because it was filed within ten days of the order. Miss. R. Civ. P. 59(e); Miss. R. App. P. 4(d). But the special judge denied reconsideration on May 24, 2021. The Estate contends this started the thirty-day window to appeal. So in the Estate's view, Malouf's August 22, 2022 notice of appeal was out of time.

¶27. As support, the Estate cites this Court's recent *Pavlou* decision, which held that an order resolving a claim against an estate qualified as a final, appealable judgment. *Pavlou*, 308 So. 3d at 1288. But if we were to apply *Pavlou* to Malouf's claim, as the Estate urges us to do, then the original chancellor's June 2017 order directing the probated claims be paid from the purchase price of the Estate's assets would have been final and appealable. And the finality of this unappealed order would have deprived the chancery court of the ability to later grant the Estate's motion to extinguish Malouf's probated claim.

¶28. The Estate, however, did not treat this order as final. Instead, the Estate later moved to have the chancery court declare that the Estate did not have to pay this claim out of Rebecca's asset-purchase money. Thus, it is certainly inconsistent to suggest that the order directing the Estate to pay Malouf's claim was interlocutory and subject to revision until the Estate matter was closed but the much later order relieving the Estate of having to pay the probated claim was final and not subject to appeal after thirty days.

10

¶29.    The more consistent approach, under the particularly unusual circumstances of this case, is to acknowledge that, in contrast to the order appealed in *Pavlou*, neither order "finally resolve[d] a claim against an estate." *Id.* at 1288. As the original chancellor aptly observed, "this is not . . . a normal probate." In contrast to the claim in *Pavlou*, Malouf's probated claim did not exist on an island. Instead, payment of its claim was conditioned on and tethered to the larger—and seemingly never-ending—issue of Rebecca buying the assets of the Estate.

¶30.    Instead of *Pavlou*, this case is factually more akin to *Rush Foundation Hospital v. Carlisle*, 269 So. 3d 222, 226 (Miss. Ct. App. 2018). In that case, the Court of Appeals exercised jurisdiction over the denial of a claim, which was not appealed until the close of the estate. And the Court of Appeals did so, in large part, because "the chancellor's judgment . . . did not directly address all disputed issues" between the claimant and estate. *Id.*

¶31.    To be clear, we are not altering our holding in *Pavlou*, which reiterated that "an order that *finally* resolves a claim against an estate is final and appealable although the estate remains open." *Pavlou*, 308 So. 3d at 1288 (emphasis added); *see also, e.g.*, *Obert L. Grp., P.A. v. Holt*, 328 So. 3d 622, 626 (Miss. 2021) (applying *Pavlou* to hold that an order "surcharging the attorney's fees collected against [the] estate was likewise a final, appealable judgment"). But we find the chancellor's decisions here, as they relate to Malouf's claim, do not fall into that category of final, appealable estate decisions. Instead, given the variety of complexities and the protracted nature of this chancery saga, we find the chancellor did

11

not err by determining her order denying Malouf's probated claim was interlocutory and that a Rule 54(b) certified judgment should be entered. And because Malouf filed its notice of appeal within thirty days of that Rule 54(b) certified final order, we find Malouf's notice of appeal timely.

¶32. Thus, we have jurisdiction to address the merits of its appeal. The Estate's motion to dismiss is denied.

## II. Malouf's Probated Claim

¶33. Turning to the merits, we hold the chancellor erred by deeming Malouf's timely probated claim barred by Mississippi Code Section 15-1-25.[5]

¶34. This section provides a statute of limitations for actions against an estate executor. Under Section 15-1-25, "[a]n action or scire facias may not be brought against any executor or administrator upon any judgment or other cause of action against his testator or intestate, except within four years after the qualification of such executor or administrator." An executor or administrator cannot be sued "until after the expiration of ninety (90) days from the date of letters testamentary or of administration." Miss. Code. Ann. § 91-7-239 (Rev. 2021). So the actual statute of limitations is four years and ninety days following the date of letters testamentary. *Carlisle*, 269 So. 3d at 227 (interpreting and applying Sections 15-1-25 and 91-7-239). The original Estate executor was appointed on December 19, 2014. So this statute of limitations would have run March 19, 2019.

---

[5] We reiterate that the timeliness of Malouf's probated claim under Section 91-7-151 is not at issue in this case. *See supra* n.3.

12

¶35. The Estate's view, advanced by Executor Morton, is that based on this statute, Malouf had to be paid—or had to take action against the executor—within that four-year-plus-ninety-day window or forfeit its right to payment. *See id.* ("['U]nder the strict language of this section[,] the owner of a probated claim must insist upon satisfaction or bring his action against the executor or administrator' within the time provided by statute." (second alteration in original) (quoting ***Rogers v. Rosenstock***, 117 Miss. 144, 77 So. 958 (1918))). But Malouf argues that, once Chancellor Clark entered the June 20, 2017 order directing the sale of assets, no further action was necessary on Malouf's part. Its being paid on its probated claims was a condition of the assets being transferred.

¶36. We agree with Malouf.

¶37. The Estate's argument boils down to its contention that Rebecca and the Estate never intended for all probated claims to necessarily be paid by the purchase price—a price which just so happened to be the sum total of the amount of probated claims. Instead, the Estate asserts that the parties understood certain claims may be contested for various reasons, such as failure to take action within Section 15-1-25's limitations period. But to suggest Rebecca did not intend to pay all enumerated probated claims when she bought the Estate for $8 million goes directly against the plain language of Rebecca's offer—an offer Chancellor Clark expressly accepted "pursuant to the terms therein."

¶38. Rebecca's offer was clear. It began by declaring her intent—"to payoff the claims that were timely probated against the Estate." And undeniably, Malouf's claim was among the list of timely probated claims. The final purchase price—which Executor Morton now claims

13

was merely a "purchase price formula" to assure the Estate *could* pay all valid claims—was expressly tied to the payoff amount of the probated claims. And if the offer could not be any more clear, its next section began with an underlined sentence: "All Probated Claims Will be Paid." So there is simply no validity to the substitute executor's assertion that Rebecca and the Estate never intended that all probated claims be paid by the asset sale proceeds.

¶39. In fact, Rebecca's post-June 20, 2017 filings reinforce this stated intent. In her first request to clarify the June 20, 2017 order, Rebecca acknowledged that the chancellor had accepted her offer to purchase the assets of the Estate in exchange for the payment of its debts—the debts being "the claims probated against the Estate." And in her 2019 motion to effect the asset sale, she requested *all* unpaid probated claims against the Estate attach to the proceeds of the Estate.

¶40. For this reason, we hold that Malouf did not have to take further action against the executor to ensure payment. Instead, its payment was ensured by the executor complying with the asset sale's terms, as ordered by the chancellor on June 20, 2017.

¶41. Executor Morton cherry picks the line from this order directing the executor to "extinguish all debts of the estate." He argues moving to have Malouf's probated claim denied as untimely pursued was one of the many permissible way to "extinguish" this debt. In further support of his view, he points to language in an order that preceded the June 20, 2017 order, in which the chancellor noted the original executor's representation that "[i]n excess of eight million dollars in claims have been probated with the court by various creditors, a small percentage of which the Executor states he might contest." Latching to this

14

language, the substitute executor asserts nothing in the June 20, 2017 order prohibited him from challenging Malouf's and others' probated claims.

¶42. But this argument completely ignores Chancellor Clark's express reason for choosing Rebecca's offer over the Ivisons' offer—that, while the Ivisons had planned to contest several probated claims, Rebecca did not. Instead, under Rebecca's offer, all probated claims would be paid *without any further litigation*. Indeed, the court preferred Rebecca's offer because it achieved "finality" by "pay[ing] all Probated Claims, moot[ing] all pending motions, and allow[ing] the Estate to be closed."[6] So to claim Malouf could not be paid because it did not further litigate its claim goes against one of the very reasons the chancellor accepted Rebecca's offer.

¶43. Based on the June 20, 2017 order directing the executor to "extinguish"—i.e., *pay* all probated claims of the Estate with the asset sale proceeds—we find Malouf did not have to take any additional action against the executor to prevent Section 15-1-25's statute of limitations from running. Requiring Malouf to file a lawsuit seeking the exact same outcome the chancellor had already granted him in the June 20, 2017 order would be, as Malouf put it, "nonsensical and against judicial economy."

---

[6] The court clarified the June 20, 2017 order twice. One clarification ordered that the Estate transfer its assets to Rebecca "upon payment of any claims probated against the Estate." The other clarification stated that a combination of Rebecca's "payments and assumptions of debt will benefit the estate in the amount of $8,000,000." These clarifications show that Rebecca was not to benefit from the Estate until the Estate had benefitted in turn by paying off the probated claims—one of which was Malouf's clearly listed claim. Such payments would have satisfied creditors and relieved the Estate from its vast debts.

15

¶44. We note that Executor Morton's former client RPPC did not initiate litigation against the Estate. True, RPPC did file a Motion to Compel payment on March 19, 2019—the last day of Section 15-1-25's limitations period. But all this motion did was assert that, contrary to Rebecca's months-earlier status update of probated claims, RPPC's claims had not been withdrawn. Instead, RPPC asserted it should be paid out of the proceeds of the asset purchase, which had yet to occur. Tellingly, RPPC's motion relied on *the very same order* that Malouf does—the June 2017 Order Directing Sale of Estate Assets. Because that order secured Malouf's right to payment, just as it did RPPC's, Malouf was in no different position than RPPC and should not have been treated differently by the Estate.

¶45. Instead of the Estate's claim that further action by Malouf was required, the June 20, 2017 order rendered Section 15-1-25's statute of limitations inapplicable because in that order the court recognized Malouf's right to payment. Thus, Malouf had no further action to take.

¶46. For this reason, the chancellor erred by denying Malouf's probated claim based on its purported failure to act within Section 15-1-25's limitations period. We reverse the judgment denying Malouf's claim, and we remand this matter to the chancery court with instructions to direct the Estate to pay Malouf's claim with the proceeds from the asset purchase sale, just as the Estate was already ordered to do more than six years ago.

¶47. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.**